# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| I.B.I.D. ASSOCIATES LIMITED PARTNERSHIP d/b/a I.B.I.D ASSOCIATES, L.P., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 2:22-cv-00954 |
| | : | |
| COUNCILMEMBER JAMIE GAUTHIER and THE CITY OF PHILADELPHIA, | : | |
| Defendants. | : | |

## DEFENDANTS' MEMORANDUM OF LAW
## <u>IN SUPPORT OF THEIR MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. iii

I.     INTRODUCTION ............................................................................................ 1

II.    FACTUAL BACKGROUND ........................................................................... 2

III.   LEGAL STANDARD ...................................................................................... 4

IV.   ARGUMENT .................................................................................................. 5

   A.   IBID's Claims Are Not Ripe ....................................................................... 6

   B.   The Overlay Law Does Not Impair Any Contract ........................................ 9

      1.   There Is No Impairment ........................................................................ 9

      2.   The Overlay Law is Reasonable and Necessary to Preserve Affordable Housing .... 11

   C.   The Overlay Law Has a Rational Basis Under Substantive Due Process ..................... 11

   D.   There Is No Equal Protection Violation ......................................................... 12

      1.   IBID Fails to Allege Similarly Situated Comparators ................................ 13

      2.   The Overlay Law's Provisions Are Rationally Related to Preserving Affordable Housing in the AHP Overlay ..................................................................... 14

   E.   The Overlay Law Is Neither a *Per Se* nor a Regulatory Taking ................... 16

   F.   The Overlay Law is Not a Bill of Attainder .................................................. 19

   G.   The Councilmember Has Immunity for Her Actions ..................................... 21

      1.   The Councilmember Has Legislative Immunity ....................................... 21

      2.   The Councilmember Is Entitled to Qualified Immunity ........................... 23

V.    CONCLUSION .............................................................................................. 24

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*440 Co. v. Borough of Ft. Lee*, 950 F. Supp. 105 (D.N.J. 1996) ...................................15

*A Helping Hand, LLC. v. Baltimore County*, 299 F. Supp. 2d 501 (D. Md. 2004) .....................21

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)...............................................................6, 7

*Acierno v. Cloutier*, 40 F.3d 597 (3d Cir. 1994)..........................................................22, 23

*ACRA Turf Club, LLC v. Zanzuccki*, 724 Fed. App'x 102 (3d Cir. 2018)...................................12

*Adhi Parasakthi Charitable, Med., Educ., & Cultural Soc'y of N. Am. v. Twp. of W. Pikeland*, 721 F. Supp. 2d 361 (E.D. Pa. 2010) ...................................................15

*Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359 (3d Cir. 2012).......................................................................................................10, 12

*Appeal of Key Realty Co.*, 182 A.2d 187 (Pa. 1962) .......................................................19

*Ashcroft v. Iqbal*, 566 U.S. 662 (2009).......................................................................13

*Aulisio v. Chiampi*, 765 F. App'x 760 (3d Cir. 2019) .......................................................15

*Bag of Holdings, LLC v. City of Phila.*, 682 Fed. App'x 94 (3d Cir. 2017) ..............................24

*Baraka v. McGreevey*, 481 F.3d 187 (3d Cir. 2007)........................................................22, 23

*Bawa Muhaiyaddeen Fellowship v. Phila. Zoning Bd. of Adjustment*, 19 A.3d 36 (Pa. Cmwlth. 2011) ..........................................................................................9

*Block v. Hirsh,* 256 U.S. 135 (1921)...........................................................................18

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998)................................................................22, 23

*Cedar Point Nursery v. Hassid,* 141 S.Ct. 2063 (2021) ...............................................16, 17, 18

*Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628 (3d Cir. 1991) .........................................7

*CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612 (3d Cir. 2013).....................................8

*Coalition of N.J. Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666 (D.N.J. 1999) ......................20

*Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1 (1961).......................20

*Congregation Kol Ami v. Abington Twp.,* 309 F.3d 120 (3d Cir. 2002)....................................16

*Cordi-Allen v. Conlon*, 494 F.3d 245 (1st Cir. 2007) ...................................................13, 14

*County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159 (3d Cir. 2006)...........................7, 8, 9

*Engquist v. Or. Dep't of Agr.*, 553 U.S. 591 (2008) ........................................................13

*Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926)..........................................................18

*Flemming v. Nestor*, 363 U.S. 603 (1960) ...............................................................12, 21

*Gallas v. Supreme Court of Pa.*, 211 F.3d 760 (3d Cir. 2000) .........................................11, 22

*Giuliana v. Springfield Twp.*, 238 F. Supp. 3d 670 (E.D. Pa. 2017) .......................................14

*HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337 (E.D. Pa. 2020)....................................24

*HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180 (3d Cir. 2021)............................22, 23, 24

*Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264 (1981) ..........................8, 18

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012)..........................................................................................5

*Knick v. Township of Scott*, 139 S.Ct. 2162 (2019) ..........................................................6

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) .............................................................5

*Larsen v. Senate of Com. of Pa.*, 152 F.3d 240 (3d Cir. 1998)............................................22

*Los Alamos Study Grp. v. U.S. Dept. of Energy*, 692 F.3d 1057 (10th Cir. 2012) .........................7

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992).................................................16, 17, 19

*LuLu Shriners v. Twp. of Whitemarsh*, No. 20-1720, 2021 WL 3885127 (E.D. Pa., 2021) ...............................................................................................................21

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) .............................................................5

*Mullenix v. Luna*, 136 S.Ct. 305 (2015)...........................................................24

*NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333 (3d Cir. 2001) ......................6

*Nicholas v. Pa. State Univ.*, 227 F.3d 133 (3d Cir. 2000) ......................................12

*Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425 (1977)...............................................20, 21

*Pa. Coal Co. v. Mahon*, 260 U.S 393 (1922).............................................................19

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461
U.S. 190 (1983)...............................................................................................6

*Penn Centr. Transp. Co. v. New York City*, 438 U.S. 104 (1978) ...................16, 18, 20

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir.
1993).............................................................................................................2

*Perano v. Twp. of Tilden*, 423 Fed. App'x 234 (3d Cir. 2011)..................................13

*Perry v. Pa. Dep't of Corr.*, 441 Fed. App'x 833 (3d Cir. 2011) .................................24

*PG Pub. Co. v. Aichele*, 705 F.3d 91 (3d Cir. 2013) .................................................13

*Pinckney v. City of Passaic*, No. 17-5149, 2019 WL 1013325 (D.N.J. 2019) .............................20

*Reichele v. Howards*, 566 U.S. 658 (2012).............................................................24

*Renne v. Geary,* 501 U.S. 312 (1991) .....................................................................5

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410
(3d Cir. 1999)...............................................................................................2

*Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639 (3d Cir. 1995)...................................12

*Save Ardmore Coalition v. Lower Merion Twp.*, 419 F. Supp. 2d 663 (E.D. Pa.
2005).............................................................................................................5

*Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213 (4th Cir. 2019).....................7

*Selective Serv. Sys. v. Minnesota Pub. Interest Research Grp.*, 468 U.S. 841
(1984)...............................................................................................20, 21

*Srail v. Vill. of Lisle*, 588 F.3d 940 (7th Cir. 2009) ...................................................15

*Startzell v. City of Philadelphia*, 533 F.3d 183 (3d Cir. 2008) ......................................13

*Stotter v. Univ. of Tex. at San Antonio,* 508 F.3d 812 (5th Cir. 2007)...........................15

*Sveen v. Melin*, 138 S.Ct. 1815 (2018) ..............................................................9, 10

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302
(2002)...............................................................................................17

*Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285 (3d Cir. 1993) ...............7, 8, 11

*Tenney v. Brandhove*, 341 U.S. 367 (1951)............................................................23

*Transp. Workers Union of Am., Local 290 v. SEPTA*, 145 F.3d 619 (3d Cir. 1998)....................10

*U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1 (1977)............................................11

*Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000).................................................14

*Vorum v. Canton Twp.*, 308 Fed. App'x 651 (3d Cir. 2009).......................................12

*Williamson County Regional Planning Com. v. Hamilton Bank,* 473 U.S. 172
(1985).............................................................................................6, 7, 8

*Yee v. City of Escondido, Cal.*, 503 U.S. 519 (1992)................................................18

*Youngblood v. DeWeese*, 352 F.3d 836 (3d Cir. 2003)..............................................23

## <u>Statutes</u>

Phila. Code § 14-303.....................................................................................9

Phila. Code § 14-304.....................................................................................4

Phila. Code § 14-533.....................................................................................3

Phila. Code § 14-701.....................................................................................3

Phila. Home Rule Charter § 1-101 .................................................................24

iv

Phila. Home Rule Charter § 1-102.............................................................................................. 24

Phila. Home Rule Charter § 2-202............................................................................................... 4

**Other Authorities**

City of Phila. City Council Leg. Info. Ctr., *Legislation File #: 210778-AA*................................... 4

## I.     INTRODUCTION

Plaintiff's Complaint challenges the constitutionality of the Philadelphia City Council's legislative efforts to address the lack of affordable housing through zoning and land-use regulations. Upset with the perceived impact of recent zoning amendments that incentivize the development of affordable housing along a corridor that includes Plaintiff's property on Plaintiff's efforts to sell its property, Plaintiff asserts that the City's effort violates its constitutional rights.  But local governments regularly address affordable housing through zoning and Plaintiff's attempts to argue that the City's action here is irrational and an unconstitutional taking rests on a broad—and unsupported—extension of takings law that would ultimately eviscerate all zoning regulation.  As explained below, Plaintiff's takings claim as well as its other constitutional theories are unsupported and should be dismissed as a matter of law.

Notably, Plaintiff does not just name the City. It also seeks damages from Councilmember Jamie Gauthier, an independently elected public official, in her personal capacity. While the City understands that Plaintiff may not be pleased by City Council's enactment of a law addressing affordable housing and potentially impacting development efforts, the inclusion of the Councilmember is inappropriate, unnecessary, and unsupported by law. This is just as true of Plaintiff's claims against the Councilmember in her official capacity as it is of Plaintiff's surprising inclusion of punitive damages and claims against the Councilmember individually.  Legislators are afforded broad immunities to serve the public. Plaintiff's portrayal of itself as a victim of one Councilmember's actions rests on a mistaken view of the legislative process. The legislation Plaintiff challenges has been passed by City Council, and this Court, in reviewing the actions of City Council, has no basis to impose liability on an individual councilmember. Plaintiff's inclusion of the Councilmember is contrary to law and appears to be nothing more than an intimidation tactic.

When the focus is on the legal issues, and Plaintiff's bluster is set aside, it is clear that each of Plaintiff's claims fail and the Court should grant the City's motion to dismiss.

## II.    FACTUAL BACKGROUND

According to the Complaint,[1] all parties here believe "in the value of affordable housing and the need to preserve affordable housing in Philadelphia." (ECF No. 1 ¶ 8). For the past four decades, the 70 units at the University City Townhomes owned by IBID at 3900 Market Street (the "Property" or "Townhomes") have been a key source of affordable housing in West Philadelphia. (*Id.* ¶¶ 8-9, 33). Many of the Townhomes house families and individuals who have lived there since the Townhomes' inception. (ECF. No. 1-3 at 134[2]). The Property is located in a diverse neighborhood with abundant amenities and economic activity. (ECF No. 1 ¶¶ 10, 47).

IBID first contracted with HUD in 1982 for a mortgage to construct the Townhomes and offer them for rent at reduced rents. (*See id.* ¶ 32; ECF No. 1-3 at 6-7). The Townhomes have been rented as Section 8 affordable housing for about 40 years pursuant to a housing assistance payments contract with the Department of Housing and Urban Development (HUD) (the "HUD Contract"). (ECF No. 1 ¶ 8). IBID has renewed the HUD contract several times, most recently for the 2021 fiscal year, which expires by its own terms on July 8, 2021. (*Id.* ¶ 36; ECF 1-3 at 17). The HUD Contract requires IBID to notify HUD and the residents of the Townhomes in advance of terminating the HUD Contract in accordance with HUD regulations. (*See id.* at 21 ¶¶ 8-9). In July 2021, IBID notified its tenants that it would not be renewing ("opt[ing] out") its

---

[1] For purposes of this Motion to Dismiss only, Defendants take the facts as pled to be true. However, when deciding a Rule 12(b)(6) motion, the Court is not limited to allegations in the complaint and documents referenced in the complaint. The Court may also consider matters of public record such as legislative history, judicial documents, "and published reports of administrative bodies." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993); *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

[2] Pinpoint citations to ECF documents are to the ECF system pagination.

HUD Contract and evicting the residents in one year. (ECF No. 1 ¶¶ 49-50). Nothing in the HUD Contract exempts IBID from otherwise applicable law, including local zoning laws.

In the last six months, City Council has passed two affordable housing laws that are at issue here (collectively, the "Overlay Law"). First, in late 2021, it enacted the Mixed-Income Neighborhoods Overlay District (the "MIN Overlay"). The MIN Overlay is a zoning overlay that applies in certain areas of West and North Philadelphia and requires any *newly constructed* "Residential Housing Project"[3] within its boundaries to maintain 20% of all dwelling units and 20% of all sleeping units as affordable[4] on the same site as all other dwelling and sleeping units, with certain very limited exceptions. *See* Phila. Code § 14-533(1), (3). Residential Housing Projects in the MIN Overlay are permitted to be built at significantly higher density than would otherwise be permitted in a property's base zoning district.[5] The Property is located within the MIN Overlay.

Second, Council passed Bill 210778-AA[6] which enacts the Affordable Housing Preservation Overlay District (the "AHP Overlay"). The AHP Overlay applies to the area

---

[3] The term Residential Housing Project is defined in Section 14-533(2) of the Code, as "any development which itself, or in combination with any closely related development, involves the construction of ten or more dwelling units, twenty or more sleeping units, or both, and that is located in whole or in part within the Mixed Income Neighborhoods Overlay District," with certain limited exceptions.

[4] The affordability requirements are set forth in Section 14-533(6) of the Code.

[5] *Compare* Phila. Code § 14-533(4) at Table 14-533-4: Maximum Floor Area Ratios in MIN Overlay District; *with* § 14-701(3) at Table 14-701-3: Dimensional Standards for Commercial Districts.

[6] Bill No. 210778 was introduced by Councilmember Gauthier on September 30, 2021. (ECF No. 1 ¶ 14). The Bill then went through stages of City and legislative processes appropriate for zoning related bills, including consideration by the Philadelphia Planning Commission on October 21, 2021, and by the Council Committee on Rules on October 26, 2021. (ECF No. 1 ¶ 14). *See generally* Phila. Code § 14-304(3)(b)-(c). The Bill, with amendments that had been made during these consideration processes, was voted out of the Council Committee on the Rules and became effective on that date. (ECF No. 1 ¶ 14); Phila. Code § 14-304(3)(g). On March 10, 2022, City Council considered the Bill in its amended form and voted 15-1 in favor of

between 39th Street to the east, 40th Street to the west, Filbert Street to the north, and Ludlow Street to the south, which includes the Property. (ECF No. 1-3 at 272 (Bill at Proposed Code § 14-534(2))). In relevant part, the AHP Overlay provides that all non-residential uses must be located on the ground floor of a building and imposes a twelve-month moratorium on demolition to the Property. (*Id.* at 278-79 (Bill at Section 2 (Proposed Code § 14-534(2)), Section 3)).

Many possible property uses are available. Nothing in the Overlay Law prevents the Property's owner from building, by right, a high-rise-residential structure comparable to the high-rise residential towers found throughout Philadelphia's Center City business district and University City, with commercial use on the first floor, after the demolition moratorium ends. (*See id.* at 278-79). If the property includes a significant amount of residential housing that triggers the affordability requirements under the MIN Overlay, IBID would be able to build at 50% greater density under the MIN Overlay development standards applicable than the previous zoning. *See supra* note 5. Alternatively, IBID can also rent out the current homes to tenants—whether or not it chooses to continue its HUD Contract—or sell them as townhomes, neither of which would require demolition of the current properties. IBID can also sell the property as a whole, as is. Nothing in the Overlay Law in any way limits IBID's right to sell the Property. IBID has not accepted an offer for the Property, filed for a building permit, or sought a variance from the Philadelphia Zoning Board. (*See* ECF 1).

## III. LEGAL STANDARD

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class*

---

the Bill. (ECF No. 1 ¶ 80). The Bill was returned without signature by the Mayor on March 23, 2022 and is now law. *See* Phila. Home Rule Charter § 2-202; City of Phila. City Council Leg. Info. Ctr., *Legislation File #: 210778-AA*, https://phila.legistar.com/LegislationDetail.aspx?ID=5153261&GUID=7B6244F2-3DDD-4660-AB62-37FC51EA4E7B&Options=ID|Text|&Search=210778 (last accessed Apr. 3, 2022).

*Action*, 678 F.3d 235, 243 (3d Cir. 2012). It is well-settled that the burden of establishing the federal court's jurisdiction always lies with the plaintiff. *Save Ardmore Coalition v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 669 (E.D. Pa. 2005). It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary,* 501 U.S. 312, 316 (1991).

A complaint fails to state a claim under Rule 12(b)(6) if it does not "contain sufficient factual allegations so as to state a facially plausible claim for relief." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court must "accept all factual allegations in the complaint as true, [and] construe the complaint in the light favorable to the plaintiff," but "is not required to accept legal conclusions alleged in the complaint." *Id.* at 229. The question is whether the facts alleged, even if true, fail to support the claim. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

## IV.   ARGUMENT

IBID's complaint is both jurisdictionally deficient and fatally flawed. At the outset, IBID's claims are not ripe for this Court's consideration because as-applied challenges to property regulations are not justiciable unless and until the zoning board denies the challenger a variance from the law's requirements. Here IBID does not allege it has been denied, or even applied for, a variance.

IBID also fails to plausibly allege facts to state a claim under any of the Constitutional provisions it raises. IBID identifies no contractual provision impaired by the Overlay Law, and the Overlay Law rationally limits commercial development and incentivizes residential construction to preserve and increase affordable housing in the area. And because the Overlay Law does not require IBID to grant individuals physical access to its property nor substantially diminish the Property's value, IBID has failed to state a claim for a taking.

**A. IBID's Claims Are Not Ripe**

IBID's claims in this case are unripe under the first prong of *Williamson County Regional Planning Com. v. Hamilton Bank,* 473 U.S. 172, 186 (1985). IBID does not allege it has even applied for a demolition permit, let alone been denied a variance from the Overlay Law's provisions.  As a result, the Court currently lacks subject matter jurisdiction to consider IBID's challenges under the first prong of *Williamson County*[7] and IBID's claims should be dismissed under Rule 12(b)(1)).

The question of ripeness, like other challenges to a court's subject matter jurisdiction, is treated as a motion under Rule 12(b)(1). *See NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). It turns on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). Questions of ripeness often arise, as they do here, when litigants seek federal court review before administrative agency review is complete. As with abstention, the ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs.*, 387 U.S. at 148–149; *cf.*, *e.g. Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628 (3d Cir. 1991) (*Pullman* abstention applies where resolution of uncertain

---

[7] In *Knick v. Township of Scott*, the Supreme Court recently overruled *Williamson County's* second prong, an exhaustion requirement to seek compensation in state court prior to suing in federal court, but did not address the first prong Defendants assert here. 139 S.Ct. 2162, 2169 (2019) ("*Williamson County* held that the developer's Fifth Amendment claim was not 'ripe' for two reasons. First, the developer still had an opportunity to seek a variance from the appeals board, so any taking was therefore not yet final. Knick does not question the validity of this finality requirement, which is not at issue here." (citation omitted)).

state law issues could obviate need for adjudication of federal constitutional claim). Accordingly, courts routinely hold that claims are not ripe where the agency has not yet acted. *See, e.g., Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019); *Los Alamos Study Grp. v. U.S. Dept. of Energy*, 692 F.3d 1057 (10th Cir. 2012). While the two concepts overlap, the finality question of ripeness is "conceptually distinct" from an exhaustion requirement. *Williamson County*, 473 U.S. at 192.

The ripeness requirement has particular force in the zoning context because of the power of zoning boards to grant variances from zoning ordinances. *See Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1291 (3d Cir. 1993) (in the land-use context, the "finality rule . . . prevents the premature adjudication of zoning disputes"). As the Third Circuit explained, *Williamson County* holds that "claim[s] against a municipality's enforcement of a zoning ordinance is not ripe until . . . 'the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue' (the 'finality rule')." *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (quoting *Williamson County,* 473 U.S. at 186, 194–95). In particular, claims premised on denial of permits are unripe where the government entity has the power to grant a variance, but the applicant has not even applied for one. *See, e.g.*, *Williamson County*, 473 U.S. at 193-94 ("[R]esort to the procedure for obtaining variances would result in a conclusive determination by the Commission whether it would allow respondent to develop the subdivision in the manner respondent proposed."); *Hodel v. Va Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 297 (1981) ("If appellees were to seek administrative relief under these procedures, a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating any need to address the constitutional questions."); *CMR D.N. Corp. v. City of Philadelphia*, 703

F.3d 612, 626 (3d Cir. 2013) (constitutional challenge to height restriction ordinance unripe, where developer never applied for a building permit).

The "finality rule" articulated in *Williamson County* bars not only as-applied Just Compensation Takings claims, but also related claims such as as-applied substantive due process and equal protection claims by property owners or tenants who have failed to take advantage of available procedures. *County Concrete,* 442 F.3d at 164 (3d Cir. 2006); *Taylor*, 983 F.2d at 1288-92 (equal protection and substantive due process claims challenging revocation of use permit not ripe where owners did not reapply for a use permit, appeal the revocation, or seek a variance). This is because "only once a 'decision maker has arrived at a definitive position on the issue' has a property owner been inflicted with 'an actual, concrete injury,'" *County Concrete,* 442 F.3d at 164 (quoting *Williamson County*, 473 U.S. at 192), and only then can a court determine "whether the landowner has been dissimilarly treated []or whether such treatment is rationally related to a legitimate government purpose," *Taylor*, 983 F.2d at 1295 (citations omitted).

Here, IBID claims that "[a]s applied to IBID, the Overlay Bill effects" a deprivation of its Constitutional rights resulting from a hypothetical agency action that has not yet occurred. (ECF No. 1 ¶ 99). IBID does not allege that it has applied for or been denied a demolition or building permit, let alone sought a zoning variance. The Zoning Board of Adjustment could grant a variance as to all or part of the restrictions in the Overlay Law, as applied to the Property, if IBID showed a hardship or that the provision constituted a taking. *See* Phila. Code § 14-303(8)(e), (k) (providing Zoning Board may grant variance for hardship without "limitation on the size or duration of the variance"); *see also Bawa Muhaiyaddeen Fellowship v. Phila. Zoning Bd. of Adjustment*, 19 A.3d 36, 39–40 (Pa. Cmwlth. 2011) (listing factors for zoning variance).

At the very least, IBID's claims in this case cannot be ripe until IBID's request for a zoning variance is adjudicated.

To the extent IBID's complaint could be re-cast to assert a facial challenge to the Overlay Law, it fails for the same reason. A facial takings claim must show that "*any* application of the regulation is unconstitutional." *County Concrete*, 442 F.3d at 164 (citation omitted). Because there is no claim the Overlay Law is unconstitutional as applied to other properties, and because the Zoning Board could grant IBID a variance, there is at least one application of the Overlay Law that does not violate IBID's rights. As a result, IBID's claims are not ripe and must be dismissed for lack of subject matter jurisdiction.

### B.  The Overlay Law Does Not Impair Any Contract

IBID's Contract Clause claim suffers from two fatal flaws. First, it fails to identify any impairment, let alone a substantial one. Second, the Overlay Law is reasonable and necessary to the important public purpose of preserving affordable housing. Either reason would be sufficient to defeat IBID's claim, and both apply here.

The threshold issue in a Contracts Clause claim "is whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Sveen v. Melin*, 138 S.Ct. 1815, 1821–22 (2018) (citation omitted). Only if such a showing is made does a court ask "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* at 1822 (citation omitted).

### 1.  There Is No Impairment

Under the first prong, the Court must determine "(1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial." *Transp. Workers Union of Am., Local 290 v. SEPTA*, 145 F.3d 619, 621 (3d Cir. 1998). If there has been an impairment, courts then determine where it is

substantial by looking to the party's "legitimate expectations that arise from such contractual relationships" and whether they "have been substantially thwarted." *Id.* at 622; *see also Troy Ltd. v. Renna*, 727 F.2d 287, 297 n.8 (3d Cir. 1984) (noting impairment analysis considers gains "'reasonably expected from the contract'" (citation omitted)). In determining what expectations were legitimate and whether any impairment is substantial, prior regulation of the subject matter makes related contracts "subject to further legislation in the area, and changes in the regulation that may affect its contractual relationships are foreseeable." *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 369 (3d Cir. 2012); *see also Sveen*, 138 S.Ct. at 1822 (noting reasonable expectations account for what government "could always have done"). If the law does not operate as a "substantial impairment," the Contracts Clause is not implicated. *Troy Ltd.*, 727 F.2d at 297.

While IBID has identified a contractual relationship, it does not identify any impairment. IBID claims that the Overlay Law "effectively eliminat[es] IBID's right to opt-out of the affordable housing program" with HUD and interferes with IBID's reasonable expectations when it contracted with HUD. (ECF No. 1 ¶ 131). But nothing in the Overlay Law prevents IBID from opting-out, and IBID does not identify any part of the Overlay Law that does so. Instead, IBID's complaint seems to be that some of the benefit it had hoped to reap following the end of contract may allegedly be reduced. But IBID's HUD contract does not address the Property's zoning or what IBID can do with the Property after the contract's termination. As a result, IBID's development plans are not expectations based on the contract, and any alleged interference with them does not implicate the Contracts Clause. And given the pervasiveness of zoning regulation and the fact that IBID retains the ability to sell the Property for significant development, IBID has failed to allege facts showing that any impairment would be substantial.

## 2. The Overlay Law is Reasonable and Necessary to Preserve Affordable Housing

Even if there could be some impairment deemed substantial, the City is acting reasonably in furtherance of a legitimate public purpose to preserve affordable housing. IBID acknowledges "the value of affordable housing and the need to preserve affordable housing in Philadelphia." (ECF No. 1 ¶ 7). And IBID concedes the Overlay Law's goal is "securing affordable housing in University City and West Philadelphia." (*Id.* ¶ 15). IBID alleges that the Overlay Law's failure to include other nearby properties and inconsistency with IBID's own alleged affordable housing plan somehow show the Overlay Law is not reasonable or appropriate, (*id.* ¶ 132), but when, as here, the government is not a contracting party, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure" "[a]s is customary in reviewing economic and social regulation." *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 23 (1977). As a result, any alleged impairment by the Overlay Law passes muster under the Contracts Clause.

## C. The Overlay Law Has a Rational Basis Under Substantive Due Process

IBID alleges it has a protected property interest in the Property's previous zoning such that the Overlay Law violates IBID's substantive due process rights. (ECF No. 1 ¶ 120). IBID does not allege any facts to support its conclusory assertion of a fundamental property interest necessary to invoke substantive due process protection. *See Taylor*, 983 F.2d at 1290. But even if IBID had, because the Overlay Law satisfies rational basis review, IBID failed to allege a plausible substantive due process claim.

"In a case challenging a legislative act, as here, the act must withstand rational basis review."[8] *Am. Express*, 669 F.3d at 366 (citing *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139

---

[8] As explained in the City's TRO Opposition Brief (ECF No. 13-2) and conceded by IBID at the TRO hearing, IBID's suit challenges legislative action and so the "shocks-the-conscience" test is inapplicable. In any event, "a state actor's decision is not conscience-shocking if it is related to a

(3d Cir. 2000)). Under rational basis review, courts "cannot second-guess the Legislature's factual assumptions or policy considerations that underlie the statute." *ACRA Turf Club, LLC v. Zanzucki*, 724 Fed. App'x 102, 111 (3d Cir. 2018) (citing *Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 645 (3d Cir. 1995)). "It is enough that the State offers a conceivable rational basis for its action, and '[t]he court may even hypothesize the motivations of the state legislature to find a legitimate objective promoted by the provision under attack.'" *Am. Express*, 669 F.3d at 367 (citation omitted). "It is 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision . . . .'" *Id.* (quoting *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)).

As IBID concedes, the preservation of affordable housing is a legitimate state interest. (ECF No. 1 ¶ 7 (acknowledging "the value of affordable housing and the need to preserve affordable housing in Philadelphia"). And while IBID disagrees with the means, limiting the demolition of current housing and commercial development while also incentivizing increased residential development with affordable housing "rationally further[s]" that interest. *Am. Express*, 669 F.3d at 366. As a result, IBID has not alleged a plausible violation of its substantive due process rights.

### D. There Is No Equal Protection Violation

IBID's "class of one" equal protection claim also fails as a matter of law. A "class of one" claim requires a plaintiff to demonstrate that it has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *PG Pub. Co. v. Aichele*, 705 F.3d 91, 114 (3d Cir. 2013); *see also Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 564 (2008). IBID fails to satisfy both of these requirements. First, IBID fails to allege how properties it identifies are comparable in all relevant respects, instead leaving

---

legitimate governmental objective." *Vorum v. Canton Twp.*, 308 Fed. App'x 651, 653 (3d Cir. 2009).

Defendants and this Court to guess if the properties it references are in fact similarly situated. Second, the Overlay Law's specific provisions are rationally related to the important goal of preserving existing and incentivizing further affordable housing in amenity rich neighborhoods, such as the one in which the Property is located.

### 1. IBID Fails to Allege Similarly Situated Comparators

To assert its claim, IBID must identify similarly situated properties and provide *evidence* to show that they were similar "in <u>all</u> relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis added); *see also Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (to carry burden, plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves"). It is a plaintiff's burden to allege these similarities. *See Perano v. Twp. of Tilden*, 423 Fed. App'x 234, 238-39 (3d Cir. 2011) (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)) (plaintiff's simple assertion that he was treated differently from "other similarly situated residential and commercial developers," without more specificity as to how similarly situated parties were like him in all relevant aspects, insufficient even at pleadings stage). Further, the "similarly situated" requirement must be enforced with particular rigor in the land-use context because such decisions "will often, perhaps almost always, treat one landowner differently from another." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (Breyer, J., concurring).

Here IBID does not specifically identify similarly situated properties, let alone explain how they are similar in all relevant respects. The closest IBID comes to an identification is to claim that "the adjacent properties" are similarly situation because they "are zone identically to the Property." (ECF No. 1 ¶ 112). This bare assertion does not satisfy the similarly situated requirement. Without more, this Court cannot determine if the properties and IBID's property are alike in all relevant aspects. *See Giuliana v. Springfield Twp.*, 238 F. Supp. 3d 670, 702 (E.D. Pa.

2017) ("[T]he burden of production and persuasion must be shouldered by the party asserting the equal protection violation." (quoting *Cordi-Allen*, 494 F.3d at 250-51 ("It is inadequate to merely point to nearby parcels in a vacuum and leave it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated."))).

IBID's complaint fails to articulate how these other properties are similarly situated in all relevant aspects. It does not explain if any of the comparable properties are also susceptible to expiring HUD contracts or threats of demolition of existing housing. Without knowing how these properties compare to the Property there can be no ability to appropriately compare and determine if they are in fact similarly situated and Plaintiff's complaint fails.

### 2. The Overlay Law's Provisions Are Rationally Related to Preserving Affordable Housing in the AHP Overlay

Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim. *See Stotter v. Univ. of Tex. at San Antonio,* 508 F.3d 812, 824 (5th Cir. 2007); *Srail v. Vill. of Lisle*, 588 F.3d 940, 946 (7th Cir. 2009) (plaintiff must "eliminate any reasonably conceivable state of facts that could provide a rational basis" for the government's actions). *Aulisio v. Chiampi*, 765 F. App'x 760, 765 (3d Cir. 2019). "Rational basis review requires that legislative action, at a minimum, . . . be rationally related to a legitimate governmental purpose. There is a strong presumption of validity when examining a statute under rational basis review, and the burden is on the party challenging the validity of the legislative action to establish that the statute is unconstitutional." *Adhi Parasakthi Charitable, Med., Educ., & Cultural Soc'y of N. Am. v. Twp. of W. Pikeland*, 721 F. Supp. 2d 361, 381 (E.D. Pa. 2010) (citations omitted).

The purpose of the Overlay Law is to preserve affordable housing. This is a legitimate government purpose. *See, e.g.*, *440 Co. v. Borough of Ft. Lee*, 950 F. Supp. 105, 110 (D.N.J. 1996), *aff'd*, 129 F.3d 1254 (3d Cir. 1997). As the AHP Overlay ordinance explains, it was

> inspired by the potential loss of the rich community and needed housing provided by the University City Townhomes, the significant prior history of the displacement of lower income communities in this area, and the explosion of commercial development in University City over the past ten years, the Affordable Housing Preservation Overlay District creates a framework for zoning mixed use properties in high density, amenity rich areas, to encourage sustainable residential development for the areas identified below, and other areas throughout the City.

(ECF No. 1-3 at 275 (Ex. 9 (Bill, Whereas Clauses))). The Overlay Law's pause on demolition and requirements—that on the Property and others nearby substantial future construction be primarily residential and include affordable housing—is rationally related to the legitimate government interest in preserving affordable housing in one form or another in University City and West Philadelphia. As the statement in the Overlay Law articulates, the area where IBID's property sits is amenity rich and supports the City's goal of encouraging affordable housing developments in areas such as this.

The fact that the Overlay Law only encompasses a small but vital area of West Philadelphia does not defeat this legitimate purpose. *Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120, 136 (3d Cir. 2002) ("Indeed, because the purpose of zoning ordinances is to distinguish among uses in order to draft comprehensive municipal plans, a degree of arbitrariness is inevitable. The question presented in these cases is when does a distinction cross the constitutional line. As long as a municipality has a rational basis for distinguishing between uses, and that distinction is related to the municipality's legitimate goals, then federal courts will be reluctant to conclude that the ordinance is improper."). Preserving affordable housing is an important goal and the Overlay Law helps the City reach it. The fact that IBID's property falls into the area that is the subject of the Overlay Law does not defeat that. The limitation on commercial development is likewise tied to a legitimate government interest of preserving affordable housing on the Property as is the demolition moratorium. Both will ensure that in the short- and long-term, affordable housing will be available on the Property.

*     *     *

Because IBID has not alleged how other properties are similarly situated in all relevant respects and because the Overlay Law has a rational basis, IBID's equal protection claim must be dismissed.

### E.  The Overlay Law Is Neither a *Per Se* nor a Regulatory Taking

IBID asserts that the Overlay Law—which requires development above the first floor to be residential and, if sufficiently dense, for a further percentage of that housing to be set aside as affordable housing—effects a taking, both *per se* under *Cedar Point Nursery v. Hassid,* 141 S.Ct. 2063 (2021) and *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992), as well as under the *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978) balancing test. The Overlay Law is categorically not a *per se* taking and IBID's reliance on *Cedar Point* is misplaced. Contrary to IBID's argument, the Overlay Law does not involve physical access to property (as articulated in *Cedar Point*) or the deprivation of all economic value (as in *Lucas*) but instead is a wholly supportable, non-compensable restriction on the use of property under *Penn Central*.

In *Cedar Point*, the Supreme Court held that a regulation that required a property owner to provide individuals with physical access to its property constituted a *per se* taking. 141 S.Ct. at 2074. IBID tries to make the same claim here but cannot point to any way in which the Overlay Law requires IBID to provide physical access. While the Overlay Law certainly incentivizes affordable housing by limiting the uses IBID may make of the Property, ultimately the Overlay Law leaves the decision of who to admit up to IBID; the Overlay Law does not require IBID to actually rent out such units or allow people access to the Property. As a result, and as the *Cedar Point* decision made clear, "[w]hen the government, rather than appropriating private property for itself or a third party, instead imposes regulations that restrict an owner's

ability to use his property, a different standard applies." *Id.* at 2071. There is simply no *per se* physical taking here. And given that, at a minimum, IBID can continue to use the Property for affordable housing as it currently does, IBID's claim that it has been deprived of "*all economically beneficial use of the land*" is nonsensical. (ECF No. 1 ¶ 100 (quoting *Lucas*, 505 U.S. at 1020, 1029)); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 341 (2002) (thirty-two-month development moratorium did not constitute a *per se* taking).

Instead, the Overlay Law's restrictions on the use of the Property are properly analyzed under the *Penn Central* factors for regulatory takings. *See Cedar Point*, 141 S.Ct. at 2071-72 ("To determine whether a use restriction effects a taking, this Court has generally applied the flexible test developed in *Penn Central* . . . ."). These include "'[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations[,]" and "the 'character of the governmental action'—for instance whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538-39 (2005) (quoting *Penn Central*, 438 U.S. at 124). This requires examination of "the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances." *Hodel*, 452 U.S. at 295. Importantly, with respect to the economic impact, the Court has been clear that a government regulation need not permit the highest potential return, it need only allow a "reasonable return." *Penn Cent.*, 438 U.S. at 136 (finding prohibition on further development over Grand Central Terminal that allowed continued existing use was not a taking); *accord Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926) (use restriction permitting only residential development to avoid

progression of industrial or businesses uses upheld despite resulting in 75% reduction in property value).

Under this framework the Supreme Court has expressly held that property regulations are valid in circumstances similar to those imposed by the Overlay Law. In *Yee v. City of Escondido, Cal.*, the Court found that rent control and limitations on the right to evict or *select tenants* do not constitute *per se* takings, and *Cedar Point* has not overruled this precedent. 503 U.S. 519, 529 (1992) ("When a landowner decides to rent his land to tenants, the government may place ceilings on the rents the landowner can charge or require the landowner to accept tenants he does not like without automatically having to pay compensation." (citations omitted)); *see also Cedar Point*, 141 S. Ct. at 2072 (citing but not overruling *Yee*); *Block v. Hirsh,* 256 U.S. 135 (1921) (government regulation allowing tenants to remain after expiration of lease term and prohibiting landlords from evicting tenants unwilling to pay higher rent did not constitute a taking).

Applying the *Penn Central* standard here, IBID has not even plausibly alleged a taking. The Overlay Law regulates IBID's ability to change the future use of the Property, but IBID has not plausibly alleged that any diminution in value will be so great as to constitute a taking. IBID conclusory asserts that the Property's highest and best use is as a commercial property, yet fails to allege what its value might have been and now is. (ECF No. 1 ¶ 105). IBID claims it possesses "investment-backed expectations" in the Property's future sale, yet fails to allege any non-conclusory example, such as a IBID's cost basis in the Property or sale of distinct interests in the property. The Complaint is devoid of support for the proposition that residential uses will partially destroy the value of the Property. And even if that were true, it would not qualify as a regulatory taking. *See Penn Cent.*, 438 U.S. at 130 (rejecting the idea that a taking can be established by showing the denial of "the ability to exploit a property interest that [the plaintiffs] heretofore had believed was available"); *cf. Appeal of Key Realty Co.*, 182 A.2d 187, 188 (Pa.

1962) (Appellant acquired no vested right in continuation of zoning classification which permitted erection of an apartment building).

Importantly, IBID has been maintaining the Property as affordable housing for almost 40 years now and does not assert that doing so was a valueless proposition. Only in the most extreme cases does a regulation create a taking. *See Pa. Coal Co. v. Mahon*, 260 U.S 393 (1922) (finding that a regulation that made every use of a property commercially impractical constituted a taking). That is simply not the case here. *See Lucas*, 505 U.S. at 1015. Indeed, as in *Penn Central*, the challenged Bill

> not only permits but contemplates that [IBID] may continue to use the property precisely as it has been used for the past [40] year[s] . . . . So the law does not interfere with what must be regarded as [IBID's] primary expectation concerning the use of the parcel. More importantly, on this record, we must regard the . . . law as permitting [IBID] not only to profit from the [Property] but also to obtain a "reasonable return" on its investment.

*Penn Cent.*, 438 U.S. at 136.

Thus, under the proper takings analysis, IBID has still failed to plausibly allege a taking.

### F.  The Overlay Law is Not a Bill of Attainder

Count V should be dismissed under Rule 12(b)(6) because, even accepting as true the allegations contained in the Complaint, the Overlay Law does not constitute a bill of attainder.

"A plaintiff challenging a legislative act on the ground that it is a bill of attainder must prove three elements: nonjudicial infliction of punishment; specificity as to the identity of individuals affected; and lack of a judicial trial." *Coalition of N.J. Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 692 (D.N.J. 1999). "Only the clearest proof" suffices to establish that a statute is a bill of attainder. *Pinckney v. City of Passaic*, No. 17-5149, 2019 WL 1013325, at *2 (D.N.J. 2019) (citing *Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 83 (1961)).

In considering "whether or not the legislation constitutes punishment," courts typically consider: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record "evinces a[n] . . . intent to punish.'" *Selective Serv. Sys. v. Minnesota Pub. Interest Research Grp.,* 468 U.S. 841, 852 (1984) (quoting *Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 473, 475–76, 478 (1977) (statute denying federal student aid to males who fail to register for draft does not inflict punishment within meaning of Bill of Attainder Clause). Traditional punishments include "imprisonment," "banishment," "punitive confiscation of property," and prohibition of "designated individuals or groups from participation in specified employments or vocations." *Nixon,* 433 U.S. at 474. Economic punishment is "not traditionally cognizable under the bill of attainder prohibition." *Coalition*, 44 F. Supp. 2d at 692–93. Likewise, zoning restrictions "inflict[] nothing approaching the penalties 'historically associated with punishment.'" *A Helping Hand, LLC. v. Baltimore County*, 299 F. Supp. 2d 501, 504 (D. Md. 2004) (dismissing bill of attainder claim where ordinance placed zoning restrictions on methadone clinics).

"Where the source of legislative concern can be thought to be the activity or status from which the individual is barred, the disqualification is not punishment even though it may bear harshly upon one affected." *Flemming v. Nestor*, 363 U.S. 603, 614 (1960). Similarly, the specificity-of-identify requirement refers to whether either "'the individual is called by name'" or described in terms of "past conduct," which "serves as a 'point of reference for the ascertainment of particular persons." *Selective Serv. Sys.*, 468 U.S. at 848 (citations omitted).

Here, the challenged Bill merely restricts the future uses of the Property in a manner that still allows current and future owners of the Property and others covered by the restrictions to

develop their property in a variety of ways in the future. While IBID alleges that it is harmed by the Overlay Law, this is insufficient to establish that the Overlay Law constitutes punishment or that IBID specifically been targeted. *See Fleming*, 363 U.S. at 614 (future activity-based restrictions not punishment); *LuLu Shriners v. Twp. of Whitemarsh*, No. 20-1720, 2021 WL 3885127, at *8 (E.D. Pa., 2021) (holding ordinance that singles out only entity to engage in activity "do[es] not turn a rule of general applicability into an unlawful bill of attainder"). As a result, the Overlay Law is not a Bill of Attainder.

### G. The Councilmember Has Immunity for Her Actions

All of IBID's claims against Councilmember Gauthier should be dismissed as a matter of law. This includes not only IBID's claims against the Councilmember in her official capacity, but also the brazen and baseless claims IBID has brought against the Councilmember individually as well as IBID's claim for punitive damages against Councilmember Gauthier. First, because the action IBID complains of is legislation, the Councilmember has absolute legislative immunity. Second, because IBID has not explained how the constitutional rights it claims were violated were clearly established, the Councilmember is also entitled to qualified immunity as well. IBID's claims against her are simply meritless and should be dismissed with prejudice.

#### 1. The Councilmember Has Legislative Immunity

Absolute legislative immunity shields members of "local legislative bodies for actions taken in a purely legislative capacity." *Acierno v. Cloutier*, 40 F.3d 597, 610 (3d Cir. 1994). When officials with only legislative power act, immunity applies so long as the acts were procedurally legislative. *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 190 (3d Cir. 2021) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998); *Larsen v. Senate of Com. of Pa.*, 152 F.3d 240, 252 (3d Cir. 1998)); *see also Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 774

n.14 (3d Cir. 2000) (noting "a legislative body, passing a de jure law affecting only a single person," is still "entitled to legislative immunity). "[D]rafting, introducing, debating, passing, or rejecting legislation" are all procedurally legislative activities protected by legislative immunity. *Baraka v. McGreevey*, 481 F.3d 187, 196 (3d Cir. 2007); *see also Bogan*, 523 U.S. at 55 (finding "acts of voting for an ordinance were, in form, quintessentially legislative" and "actions were legislative because they were integral steps in the legislative process").

Further, "mere technical violation of the statutory procedures specified for legislative action" does not "convert[] an otherwise legislative action into an administrative action." *Acierno*, 40 F.3d at 614. A court cannot inquire into an official's motive or intent when determining whether an act is legislative in nature. *Bogan*, 523 U.S. at 54; *see also Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) ("The claim of an unworthy purpose does not destroy the privilege."). Courts apply legislative immunity "broadly to effectuate its purposes." *Youngblood v. DeWeese*, 352 F.3d 836, 842 (3d Cir. 2003).

Here, the state action IBID complains of—the acts of introducing and voting for a zoning ordinance and amendments thereto—are quintessentially and definitionally procedurally legislative. *Baraka*, 481 F.3d at 196 (legitimate "legislative activities include voting for a resolution"). As an attempted end-around, IBID alleges that the challenged legislation only passed because of "councilmanic prerogative." (*See, e.g.*, ECF No. 1 ¶¶ 18, 61, 70, 71, 80). Plaintiff further alleges that use of the councilmanic prerogative renders the acts of councilmembers non-legislative.[9] (*Id.* ¶¶ 84-90). But for purposes of determining whether

---

[9] Setting aside the merits of IBID's policy-centric jeremiad against the practice of councilmanic prerogative, formal and informal legislative customs are far from an unusual feature of legislative bodies. *See, e.g.*, Cong. Research Serv., *"Holds" in the Senate* at 1 (2017) (noting hold requests are honored "because not doing so could trigger a range of parliamentary responses from the holding Senator(s), such as a filibuster, . . . linked with the chamber's use of unanimous consent agreements to structure the [legislative] process"), *available at* https://crsreports.congress.gov/product/pdf/R/R43563.

legislative immunity applies, the intent of the legislators is irrelevant. *HIRA*, 991 F.3d at 189. It

does not matter if the challenged legislation passed because council members approved of it on

substance or out of deference for Councilmember Gauthier's knowledge of her district, or even

based on an expectation of future reciprocity. Nor do technical complaints about the specific

procedures followed have any bearing.[10] *See Acierno*, 40 F.3d at 614. If even a legislator's letter

is procedurally legislative, *HIRA*, 991 F.3d at 189, the suggestion that informal customs could

deprive actual legislation of its legislative nature are practically frivolous.[11]

### 2. The Councilmember Is Entitled to Qualified Immunity

Qualified Immunity protects "government officials 'from civil damages liability unless

the official violated a statutory or constitutional right that was clearly established at the time of

the challenged conduct.'" *Bag of Holdings, LLC v. City of Phila.,* 682 Fed. App'x 94, 96 (3d Cir.

2017) (quoting *Reichele v. Howards*, 566 U.S. 658 (2012)). "'The dispositive question is

"whether the violative nature of *particular* conduct is clearly established."'" *Id.* (quoting

*Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)). First, IBID does not allege that there is any case

that provides for personal liability for Takings, Contracts Clause, and Bill of Attainder claims;

indeed, it is not even clearly established that there is an individual cause of action for Contracts

Clause violations under § 1983. *See, e.g.*, *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337,

349 n.45 (E.D. Pa. 2020) ("[T]here is a circuit split as to whether a private right of action exists

---

[10] Indeed, if there were procedural defects that rendered the Bill unlawful according to state law, the Bill would have no effect on IBID and IBID would lack standing to bring its claims here.

[11] IBID has elsewhere suggested that the Bill's alleged "targeting" of IBID affects procedural legislative-ness. (ECF No. 14 at 6). But this suggestion conflates the question of whether an act is "substantively legislative (i.e., involve general policy decisions rather than target individuals)" with whether it is "procedurally legislative (i.e., passed by proper legislative procedures)." *HIRA*, 991 F.3d at 189. Because the Philadelphia City Council has only legislative power, *see* Phila. Home Rule Charter §§ 1-301, 1-302(1), the only question is whether the Bill is procedurally legislative, *see HIRA*, 991 F.3d at 190 (substantively legislative question only relevant where official has both legislative and executive or administrative powers).

for a Contracts Clause violation."). Second, to the extent IBID's "class-of-one" equal protection claim is not barred by legislative immunity, it necessarily challenges discretionary government decision-making in the form of legislative policymaking, which is not a viable class-of-one claim following the Supreme Court's decision in *Engquist. See Bag of Holdings,* 682 Fed. App'x at 98; *Perry v. Pa. Dep't of Corr.,* 441 Fed. App'x 833, 838 (3d Cir. 2011). Nor has IBID identified cases establishing that applying different zoning to a limited number of properties through legislation necessarily violates equal protection. And finally, IBID has not alleged that its right to its previous zoning was clearly established or that changing its zoning would violate clearly established law on substantive due process. As a result, the Councilmember is entitled to qualified immunity from IBID's claims as well.

## V. CONCLUSION

For all the reasons set forth above, Defendants respectfully request that this Court dismiss Plaintiff's Complaint.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
Diana P. Cortes, City Solicitor

Date: April 6, 2022

By: */s/ Amy Kirby* _____
AMY KIRBY (PA ID No. 323938)
Senior Attorney
MICHAEL PFAUTZ (PA ID No. 325323)
Deputy City Solicitor
Affirmative & Special Litigation
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
Phone: (215) 683-3566
*Counsel for Defendants*