IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **I.B.I.D., ASSOCIATES LIMITED PARTNERSHIP d/b/a I.B.I.D. ASSOCIATES, L.P., INC.,** : : : : | |
| *Plaintiff,* : : | Case No. 2:22-cv-00954-JDW |
| **v.** : : | |
| **COUNCILMEMBER JAMIE GAUTHIER and THE CITY OF PHILADELPHIA,** : : : : | |
| *Defendants*. : : | |

## **MEMORANDUM**

Every land use regulation limits a property owner's otherwise-unfettered right to use its property as it sees fit, but not every land use regulation is a taking that requires the government to pay compensation. And not every taking is a *per se* taking; some takings require a more thorough analysis. In contexts outside of land use, the Supreme Court has noted that courts should apply "demanding standards" for adopting *per se* rules. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 895 (2007).

I.B.I.D. Associates asks this Court to enter a preliminary injunction against the City of Philadelphia to prevent enforcement of two ordinances that restrict I.B.I.D.'s use of property that it operates as affordable housing at 3900 Market Street in Philadelphia. Although I.B.I.D. has asserted a litany of constitutional claims, it has limited its preliminary injunction motion to its claim of a *per se* taking. As explained below, the Court concludes that I.B.I.D. has not shown that it is likely to succeed on that narrow

claim, nor has it suggested that it can show irreparable harm will come from any *per se* taking. So the Court will deny I.B.I.D.'s preliminary injunction motion.

**I.     BACKGROUND**

    **A.     I.B.I.D.'s Property And The Overlay Laws**

In 1982, I.B.I.D. acquired the property at 3900 Market Street (the "Property"). That same year, I.B.I.D. contracted with the Department of Housing and Urban Development for a mortgage to construct townhomes on the Property and offer them at subsidized rents. I.B.I.D. constructed townhomes comprising 70 units and proceeded to rent them pursuant to the terms of the HUD contract. I.B.I.D.'s original HUD contract had a twenty-year term, and I.B.I.D. has renewed it several times, most recently for a one-year term in April 2021. The Property is, and at all relevant times has been, zoned CMX-4 (Core Commercial Mixed-Use) under the Philadelphia Zoning Code, a designation that allows for high-density commercial office, research and development, and residential uses. Between September 2021 and March 2022, however, the Philadelphia City Council introduced and passed the pair of zoning overlay laws (the "Overlay Laws") that impact the Property and are at issue in this case.

First, Councilmember Gauthier introduced, and the City enacted, the Mixed-Income Neighborhoods Overlay District (the "MIN Overlay"). This is a zoning overlay that applies in parts of West and North Philadelphia and requires, with limited exceptions, any newly constructed "Residential Housing Project" within its boundaries to maintain twenty percent of all dwelling and sleeping units as affordable on the same

site as all other dwelling and sleeping units. *See* Phila. Code § 14-533(1), (3). The Property is located within the MIN Overlay.

Second, the City Council enacted the Affordable Housing Preservation Overlay District (the "AHP Overlay"). When introduced, the AHP Overlay applied exclusively to the Property, but as amended, it encompasses a single additional lot at 3901 Market Street. The AHP Overlay provides that all non-residential uses must be located on the ground floor of a building, and it imposes a twelve-month demolition moratorium that applies only to the Property. Under the AHP Overlay, after the demolition moratorium ends, a covered property's owner may build a high-rise-residential structure with commercial use on the first floor. *Id.* Finally, nothing in the Overlay Laws prevents the Property's owner from continuing to rent the current units to tenants or from selling them as townhomes.

**B.     Procedural History**

On March 14, 2022, I.B.I.D. sued the City and Councilmember Gauthier alleging that the Overlay Laws, and the process that led to them, violate several provisions of the Constitution. That same day, I.B.I.D. filed a Motion for Temporary Restraining Order and Preliminary Injunction. On March 29, 2022, the Court held a hearing and then denied the TRO. One week later, the City filed a Motion to Dismiss for Failure to State a Claim. On April 14, 2022, the Court entered a scheduling order that set dates for a preliminary injunction hearing and associated briefing.

Pursuant to the Court's scheduling order, on May 16, 2022, the Parties submitted pre-hearing memoranda and witness lists. In its memorandum, I.B.I.D notes its request

for a preliminary injunction "will be predicated solely on the *Cedar Point* and *Lucas per se* taking claims contained in Count One of its Complaint," and it tailored its witness list to those claims. (ECF No. 31 at 1.)

## II. LEGAL STANDARD

To obtain a preliminary injunction, the moving party must establish: "(1) a likelihood of success on the merits; (2) that [he] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). "Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Id.* at 708 (internal quotation marks omitted).

Generally, "a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement." *Frank's GMC Truck Ctr., Inc. v. GMC*, 847 F.2d 100, 102 (3d Cir.1988). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (cleaned up). "[A]n exception exists where the potential economic loss is so great as to threaten the existence of the movant's business." *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011), as amended (Mar. 7, 2012) (internal quotations omitted). In addition, courts can find irreparable harm where a party would not have sufficient funds to pay any judgment against it. *See Knick v. Township of Scott*, 139 S.Ct. 2162, 2179 (2019).

## III. DISCUSSION

### A.  Likelihood Of Success Of *Per Se* Taking Claim

Not every land-use regulation or zoning change that impacts property value is a taking. Most are not. "Land-use regulations are ubiquitous and most of them impact property values in some tangential way – often in completely unanticipated ways. Treating them all as *per se* takings would transform government regulation into a luxury few governments could afford." *Frompovicz v. Hissner*, 434 F. Supp.3d 269, 280 (E.D. Pa. 2020), *aff'd*, 843 F. App'x 427 (3d Cir. 2021) *(*quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324 (2002)). I.B.I.D. invokes two scenarios where the Supreme Court has found a *per se* taking, but it succeeds on neither theory.

*First*, I.B.I.D. is not likely to prevail on its claim that the Overlay Laws violate *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), because they do not require I.B.I.D. to give anyone access to the Property. The law at issue in *Cedar Point* required agricultural employers to grant union organizers access to their property "three hours per day, 120 days per year," and the Supreme Court concluded that it was a *per se* taking because "the regulation appropriate[d] for the enjoyment of third parties the owners' right to exclude…" *Id.* at 2069, 2072. The Overlay Laws do not **require** I.B.I.D. to grant access to the Property to anyone, whether a tenant or other third party. I.B.I.D. has to rent to qualifying low-income individuals. However, unlike the union organizers in *Cedar Point*, those eligible for affordable housing are not, as I.B.I.D. asserts, "certain defined third parties." (ECF No. 22 at 14.) I.B.I.D. can choose tenants from the entire class of those

5

eligible for affordable housing, rather than having to accept those (like union organizers) that some third party selects, and I.B.I.D. does not have to keep any individual tenant in the housing in perpetuity. The Overlay Laws might limit the pool of people to whom I.B.I.D. can rent, but they do not transfer the right of access from I.B.I.D. to any third party.

In opposing the motion to dismiss (but not in its preliminary injunction motion), I.B.I.D. relies on dicta in the Supreme Court's decision in *Yee v. City of Escondido*, 503 U.S. 519 (1992), that discussed a hypothetical statute that would compel "a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy." *Id.* at 528. That discussion does not aid I.B.I.D.'s cause, though, because nothing in the Overlay Laws prevents I.B.I.D. from terminating a tenant's tenancy or compels I.B.I.D. to rent to a particular tenant. So even the dicta in *Yee* doesn't apply.

*Second*, I.B.I.D. is not likely to prevail on its claim that the Overlay Laws violate *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992), because the Overlay Laws do not force I.B.I.D. to "sacrifice all economically beneficial uses in the name of the common good…." *Id.* at 1019. The Overlay Laws limit I.B.I.D.'s ability to maximize the economic value of the Property, but that's not the same as forcing it to sacrifice all economically beneficial uses. In fact, I.B.I.D. has been making economically beneficial use of the Property for the past 40 years by renting it to low-income tenants. The Overlay Laws also leave open to I.B.I.D. the possibility of redeveloping the Property in accordance with the laws. It's possible that those available uses are not the Property's highest and best use, as I.B.I.D. contends, but *Lucas* does not declare a *per se* taking every law that

limits economic use of a property. Instead, *Lucas* allows for a category of restrictions that I.B.I.D., as a property owner, should "necessarily expect … from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers…." *Id.* at 1027.

### B. Irreparable Harm

Even if the Overlay Laws did effect a *per se* taking, there is no reason to believe that denying the injunction would cause I.B.I.D. irreparable harm. Each of the harms I.B.I.D. alleges is purely economic, compensable in money. Furthermore, neither exception that allows a finding of irreparable harm in the face of purely economic injury applies. I.B.I.D. has not suggested that it can offer any evidence that the Overlay Laws would cause any loss that would threaten its business or that the City would be unable to pay any judgment rendered against it. There is no witness listed in its Pre-Hearing Memorandum that would speak to those issues, no exhibits that shed any light on that, and nothing else to indicate that I.B.I.D. will have any evidence to satisfy its burden of showing that these exceptions apply. Thus, any harm that I.B.I.D. suffers would be pecuniary, and the Court could award monetary relief.

### IV. CONCLUSION

I.B.I.D. has not established that it is likely the Overlay Laws constitute a *per se* taking, and it has not offered any indication that it will offer evidence of irreparable harm. Because I.B.I.D. has limited its preliminary injunction request to its claim of a *per se* taking, and because no evidence would change the Court's analysis of I.B.I.D.'s likelihood of success on that specific claim, the Court will deny I.B.I.D.'s request for a

7

preliminary injunction and cancel the hearing scheduled for June 1, 2022. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

May 27, 2022