**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **I.B.I.D. ASSOCIATES LIMITED** | : | |
| **PARTNERSHIP d/b/a I.B.I.D.** | : | |
| **ASSOCIATES, L.P., INC.,** | : | |
| | : | Case No. 2:22-cv-00954-JDW |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COUNCILMEMBER JAMIE** | : | |
| **GAUTHIER and THE CITY OF** | : | |
| **PHILADELPHIA,** | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

**<u>MEMORANDUM</u>**

Philadelphia City Council adopted two zoning laws that, taken together, target a single parcel at 3900 Market Street for special treatment in an effort to prevent redevelopment of an affordable housing site. The site's owner, I.B.I.D. Associates Limited Partnership, thinks the laws target it unfairly, so it channels Kent Brockman and tells the Court, "Democracy simply doesn't work."[1] But while there might be unseemly sides to the democratic process, the reality is more Winston Churchill than Kent Brockman: "Democracy is the worst form of government—except for all the others that have been tried."[2] In a democracy, if a legislator like Councilmember Jamie Gauthier targets I.B.I.D.

---

[1]     *The Simpsons: Bart's Comet* (Fox television broadcast Feb. 5, 1995).
[2]     Churchill By Himself 574 (Richard Langworth, ed. 2011 reprint).

with legislation, I.B.I.D.'s remedy is generally at the ballot box, not in the courts. For that reason, the Court will dismiss I.B.I.D.'s claims against Councilmember Gauthier and most of its claims against the City of Philadelphia. However, the Court will permit I.B.I.D. to pursue an equal protection claim against the City to try to show that the City treats it differently than everyone else.

I.   **BACKGROUND**

A.   **I.B.I.D.'s Property And The Overlay Laws**

In 1982, I.B.I.D. acquired the property at 3900 Market Street (the "Property"). That year, I.B.I.D. contracted with the Department of Housing and Urban Development for a mortgage to construct townhomes on the Property and offer them at subsidized rents. I.B.I.D. constructed 70 units and rented them pursuant to the terms of the HUD contract. I.B.I.D.'s original HUD contract had a twenty-year term, and I.B.I.D. has renewed it several times, most recently for a one-year term in April 2021. The Property is, and at all relevant times has been, zoned CMX-4 (Core Commercial Mixed-Use) under the Philadelphia Zoning Code, a designation that allows for high-density commercial office, research and development, and residential uses.

Between September 2021 and March 2022, however, the Philadelphia City Council introduced and passed the pair of zoning overlay laws (the "Overlay Laws") that impact the Property and are at issue in this case. According to I.B.I.D., the Overlay Laws resulted from Councilmember Gauthier's exercise of "councilmanic prerogative." Under this

unwritten Philadelphia tradition, councilmembers who represent geographic districts have final say on land-use decisions in their districts and other councilmembers vote along with the preference of the member whose district is impacted by a particular land-use decision.

First, the City enacted the Mixed-Income Neighborhoods Overlay District (the "MIN Overlay"). This is a zoning overlay that applies in parts of West and North Philadelphia and requires, with limited exceptions, any newly constructed "Residential Housing Project" within its boundaries to maintain twenty percent of all dwelling and sleeping units as affordable on the same site as all other dwelling and sleeping units. *See* Phila. Code § 14-533(1), (3). The Property is located within the MIN Overlay.

Second, Councilmember Gauthier introduced, and City Council passed by a 15-1 vote, the Affordable Housing Preservation Overlay District (the "AHP Overlay"). When introduced, the AHP Overlay applied exclusively to the Property, but as amended, it encompasses a single additional lot at 3901 Market Street. The AHP Overlay provides that all non-residential uses must be on the ground floor of a building, and it imposes a twelve-month demolition moratorium that applies only to the Property. Under the AHP Overlay, after the demolition moratorium ends, a covered property's owner may build a high-rise-residential structure with commercial use on the first floor. *Id.* Finally, nothing in the Overlay Laws prevents the Property's owner from continuing to rent the current units to tenants or from selling them as townhomes.

According to I.B.I.D., Council's adoption of the Overlay Laws had several procedural irregularities. Councilmember Gauthier made a presentation to the Planning Commission, which is "unusual." (ECF No. 1, ¶ 65.) Then, Council's Rules Committee considered the AHP Overlay bill even though it did not attach zoning maps or provide substantive language explaining the demolition moratorium, which according to I.B.I.D. deprived the public of full notice of the bill's consequences. During its pendency, Council adopted amendments to the AHP Overlay bill without public presentation or debate.

### B.     Procedural History

On March 14, 2022, I.B.I.D. sued the City and Councilmember Gauthier alleging that the Overlay Laws, and the process that led to their enactment, violate several provisions of the Constitution. These provisions include the Takings, Equal Protection, Substantive Due Process, and Contract Clauses, as well as the Constitution's prohibition on bills of attainder. Also on March 14, I.B.I.D. filed a motion for a temporary restraining order and preliminary injunction. Two weeks later, the Court held a hearing and then denied the TRO. On April 6, 2022, the Defendants filed a motion to dismiss. And on April 14, 2022, the Court entered a scheduling order that set dates for a preliminary injunction hearing and associated briefing.

Throughout April and into May, the Parties submitted briefing on both I.B.I.D.'s preliminary injunction request and on the Defendants' Motion to Dismiss. I.B.I.D. cabined its request for a preliminary injunction to the *per se* taking claims contained in the

4

Complaint, and the Court denied I.B.I.D.'s request on May 27, 2022. The Court now turns its attention to the Defendants' Motion to Dismiss.

## II.   LEGAL STANDARD

### A.   12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) therefore challenges the power of a federal court to hear a claim or case. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir.2006). Courts in the Third Circuit have construed ripeness arguments as arising under Rule 12(b)(1). *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 788 n.10 (M.D. Pa. 2009), aff'd, 380 F. App'x 155 (3d Cir. 2010).

In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). When "reviewing a facial challenge, which contests the sufficiency of the pleadings, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (internal quotations omitted). When presented with a 12(b)(1) motion, it is the plaintiff who has the burden to "convince the court it has jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). Finally, a court may dismiss a claim under Rule 12(b)(1) only if it "clearly appears to be

immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous." *Id.*

**B.      12(b)(6)**

A district court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "[r]ules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Id.* First, the court must identify the elements needed to set forth a particular claim. *Id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *Id.* Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790.

In determining whether the complaint states a claim for relief, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon

these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The court may also consider documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into a motion for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quotation omitted). "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.* (quotation omitted) (alterations in original).

## III.    DISCUSSION

### A.    Ripeness

Facial challenges asserting that the "mere enactment of a regulation either constitutes a taking without just compensation, or a substantive violation of due process or equal protection" are ripe upon the enactment of the challenged ordinance. *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006). The Court reads I.B.I.D.'s Complaint to assert a facial challenge. It complains about what the Overlay Bill requires "**on its face**;" that "the Overlay Bill 'goes too far';" and that "the Overlay Bill singles out the Property." (ECF No. 1 at ¶¶ 95, 106, 111 (emphasis added).) Although the City points to one paragraph discussing the effects of the bill "as applied to I.B.I.D." (ECF No. 1 at ¶ 99), that paragraph does not negate the overall context of the Complaint. Because I.B.I.D. asserts that any application of the regulation is unconstitutional, its claims are ripe for adjudication.

### B.   Immunity

Absolute immunity applies to official actions taken "in the sphere of legitimate legislative activity" and shields legislators when they perform legislative functions. *Bogan v. Scott–Harris*, 523 U.S. 44, 54-55 (1998). The immunity includes "an entitlement not to stand trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "[D]rafting, introducing, debating, passing, or rejecting legislation" are examples of legislative functions that legislative immunity protects. *Baraka v. McGreevey*, 481 F.3d 187, 196 (3d Cir. 2007). And "acts of voting for an ordinance [are], in form, quintessentially legislative." *Bogan*, 523 U.S. at 55.

In determining whether legislators are acting legislatively, a court need only consider the nature of the act. *See HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 190-91 (3d Cir. 2021). Courts in the Third Circuit "making the determination of whether a particular action was procedurally legislative or not ... need only be satisfied that the municipal body is acting pursuant to the basic legislative procedure." *Acierno v. Cloutier*, 40 F.3d 597, 614 (3d Cir. 1994). "[F]ailure of the legislative body to follow state-mandated procedures does not mean that, as a matter of federal law, the resulting action is transformed from one that is procedurally legislative into one that is not." *Id.*

Councilmember Gauthier is entitled to legislative immunity for her role in the introduction and enactment of the Overlay Laws. Her drafting, proposing, and voting for the zoning overlay ordinances are examples of quintessentially legislative activity. Neither

her use of councilmanic prerogative nor any of the alleged procedural deficiencies associated with the Rules Committee's public hearing changes that fact.

Councilmanic prerogative it is not an "ultra vires" action, as I.B.I.D. contends. (ECF No. 1 at ¶ 90). It's just a longstanding, informal agreement among councilmembers to support the land use legislation that each may propose within their respective districts. As with any proposed legislation, when a councilmember invokes councilmanic prerogative to pass legislation, no formal barrier prevents another councilmember from supporting or opposing the proposed legislation. Councilmanic prerogative is just part of the bargaining process among legislators, within the sphere of legitimate legislative activity. (The Court expresses no opinion on the exercise of councilmanic prerogative when legislation is not involved.)

As for the public hearing, nothing I.B.I.D. alleges would remove the shield provided by legislative immunity. Even if the City Council Rules Committee held a public hearing that was procedurally deficient by its own standards, nothing transforms Council's actions from ones that are procedurally legislative into ones that are not. Even if these deficiencies were of the kind that would destroy legislative immunity, I.B.I.D. has not alleged why Councilmember Gauthier is responsible for the Rules Committee's actions.

Because Councilmember Gauthier is a legislator who was acting within the sphere of legitimate legislative activity, she is entitled to absolute immunity for her actions involving the Overlay Laws. That is true even if, as seems to be the case, she singled out

I.B.I.D. for special treatment. If I.B.I.D. thinks Councilmember Gauthier mistreated it, it must make that case to voters, not to the Court. Having found that legislative immunity applies, the Court will not address whether Councilmember Gauthier is also entitled to qualified immunity for her actions. Accordingly, the Court will dismiss each of I.B.I.D.'s claims against the Councilmember.

### C.    Plausibility

#### 1.    Takings

I.B.I.D. asserts both *per se* and regulatory takings claims. When the Court denied I.B.I.D.'s preliminary injunction motion, it held that I.B.I.D. was not likely to succeed on its *per se* takings claims. (*See* ECF No. 33.) For the same reasons, the Court also finds I.B.I.D. has not stated a plausible *per se* taking claim. I.B.I.D. also asserts a regulatory takings claim under *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978). But it doesn't defend that claim in its Opposition, even though the City devoted several pages to the issue in its opening Memorandum. When a plaintiff does not respond to a portion of a motion to dismiss, courts treat that portion of the motion as unopposed. *See, e.g., Hilton v. Home Depot, Inc.*, Civ. A. No. 20-5145, 2022 WL 837207, at * 2 (E.D. Pa. March 21, 2022); *Hung Nguyen v. Bosch Sec. Sys., Inc.*, No. 18-cv-1675, 2018 WL 5839701, at * 2 (E.D. Pa. Nov. 8, 2018); *Lada v. Del. Cty. Comm. Coll.*, Civ. A. No. 08-cv-4754, 2009 WL 3217183, at * 10 (E.D. Pa. Sept. 30, 2009); *cf. McCowan v. City of Phila.*, -- F. Supp.3d --, 2022 WL 1557779, at * 15 (E.D. Pa. May 17, 2022) (same for summary judgment). Because I.B.I.D. did not respond

to the City's argument about its *Penn Central* takings claim, the Court treats that argument as unopposed and will dismiss it.

### 2. Bill of attainder

Although I.B.I.D. claims in the Complaint that the Overlay Laws constitute Bills of Attainder, they do not defend that claim in the face of the City's Motion. So the Court will treat the argument as unopposed and dismiss the Bill of Attainder claim.

### 3. Equal protection

The Fourteenth Amendment dictates that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal quotations and citations omitted).

A plaintiff may assert a 'class of one' Equal Protection challenge, where the plaintiff alleges that it, "and not a particular group, was the subject of discriminatory treatment under a particular law." *PG Pub. Co. v. Aichele*, 705 F.3d 91, 114 (3d Cir. 2013). When bringing a 'class of one' claim, the Third Circuit requires the plaintiff to allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Engquist v. Oregon Dep't of Agr.*, 553

U.S. 591, 601-02 (2008); *see also PG Pub. Co. v. Aichele*, 705 F.3d 91, 114 (3d Cir. 2013). Under this theory, the plaintiff must allege three elements: "(1) the defendant treated [it] differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). "Even if the underlying legislation is rational, a class of one plaintiff may make out a claim if the defendant has no rational basis to enforce the law selectively." *Associated Builders & Contractors, E. Pennsylvania Chapter, Inc. v. Cnty. of Northampton*, 376 F. Supp. 3d 476, 507 (E.D. Pa. 2019), *aff'd sub nom. Assoc. Builders & Contractors E. Pennsylvania Chapter Inc v. Cnty. of Northampton*, 808 F. App'x 86 (3d Cir. 2020); *see also Cradle of Liberty Council, Inc. v. City of Philadelphia*, Civ. A. No. 08-2429, 2008 WL 4399025, at *7 (E.D. Pa. Sept. 25, 2008).

I.B.I.D.'s Complaint alleges all three required elements. First, I.B.I.D. refers to adjacent properties as well as to others "in the community and City whose use includes affordable housing." (ECF No. 1 at ¶ 112.) The City demands more specificity, but the Federal Rules don't require it. The City can learn about the properties in discovery and try to distinguish them in a summary judgment motion. Second, as originally written, the AHP Overlay applied exclusively to I.B.I.D.'s property, and as amended, it only encompasses a single additional lot. Its history and structure demonstrate that Council intended the Overlay Laws to treat I.B.I.D. differently. Third, even though the Overlay Laws might have the legitimate purpose of preserving affordable housing, only I.B.I.D.'s property is subject

to the full panoply of restrictions in those laws. The City provides no reason for that different treatment. Construed in the light most favorable to I.B.I.D., the same concerns that sustain an Equal Protection claim when the government selectively enforces rational legislation against a single party also support a claim when what would otherwise be rational legislation selectively targets a party.

### 4.     Substantive due process

When evaluating a substantive due process challenge, a court must first determine whether the challenged act is legislative in character. Courts review non-legislative acts under a "shocks the conscious" standard, but legislative acts must be "rationally related to some legitimate government purpose." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000). Legislative acts include a municipal body's recommendation or vote "for a change in the permitted uses in a zoning district." *County Concrete Corp.*, 442 F.3d at 169. Even if a zoning ordinance only impacts one entity, it is still a legislative act subject to rational basis review. *See id. at* 169-70. And when a court engages in rational basis review, it "is not entitled to second guess the legislature on the factual assumptions or policy considerations underlying the statute." *Sammon v. New Jersey Bd. of Med. Examiners*, 66 F.3d 639, 645 (3d Cir. 1995).

I.B.I.D. fails to allege facts that would allow the Court to conclude the Overlay Laws violate substantive due process. The laws are legislative in character. They concern changes in the permitted uses in the CMX-4 zoning district, and Council adopted them

via the legislative process. I.B.I.D. has not alleged that the introduction of or vote for the laws violated any rules. Thus, the Overlay Laws are subject to rational basis review. Per that standard, the changes are rationally related to the preservation of affordable housing in Philadelphia, a legitimate governmental purpose.

I.B.I.D.'s arguments that the Overlay Laws violate substantive due process do not comport with precedent and once again attempt to delve into the hotdog-making of the legislative process. This is not a situation where I.B.I.D. satisfied established criteria for development approval but was nevertheless rejected, as in *Woodwind Estates, Ltd. v. W J. Gretkowski*, 205 F.3d 118, 123-25 (3d Cir. 2000), nor are the Overlay Laws "unrelated to land use planning," as in *County Concrete Corp.*, 442 F.3d at 170. I.B.I.D.'s reliance on *Umdasch Real Estate USA, Ltd. v. Borough of Wallington*, Civ. A. No. 2:20-cv-16346, 2021 WL 1050230 (D.N.J. Mar. 19, 2021), is also misplaced because that case considered a zoning ordinance that impeded a landowner's "only economically viable business model." *Id.* at * 2. I.B.I.D., in contrast, has an economically viable business model for its property, even if it is not the most valuable business model. Finally, just because I.B.I.D. can point to alternative methods by which the City could achieve its affordable housing goals, the Court may not second guess the factual assumptions or policy considerations that motivated City Council to vote for the Overlay Laws. Thus, even if all of I.B.I.D.'s allegations are true, they do not support a plausible violation of substantive due process, so the Court will dismiss this claim.

###### 5.    Contract Clause

The Contract Clause provides that no state shall pass any law "impairing the Obligation of Contracts." U.S. Const. art. I, § 10. The Clause only applies where a change in law substantially thwarts a party's legitimate expectations that arise from a contractual relationship. *See Transp. Workers Union of Am., Local 290 v. SEPTA*, 145 F.3d 619, 621 (3d Cir. 1998). "Contract Clause analysis requires three threshold inquiries: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial." *Id.* (citations omitted).

I.B.I.D. has identified a contractual relationship, the 2021 HUD Contract. But the Overlay Laws don't impair that relationship. I.B.I.D. bases its argument on the termination provision in the 2021 HUD Contract, a provision that gives I.B.I.D. the option to terminate the agreement. The Overlay Laws do not forbid I.B.I.D. from exercising that option; they just make it financially unpalatable to do so. That is, through the Overlay Laws, Council applied economic pressure to force I.B.I.D. to refrain from the exercise of its termination rights under the 2021 HUD Contract. But the application of economic pressure does not constitute "impairment" of a contract under the Contract Clause. Because the Overlay Bills leave I.B.I.D.'s contractual terms intact, they do not violate the Contract Clause. That is true even if they undermine I.B.I.D.'s expectations about the value of its rights under the 2021 HUD Contract.

**IV.    CONCLUSION**

As I.B.I.D.'s claims are ripe, the Court has subject matter jurisdiction, so it will not grant the Defendants' motion to dismiss on that basis. Councilmember Gauthier, however, is entitled to legislative immunity, so the Court will dismiss all claims against her. Against the City, I.B.I.D. has an equal protection, class-of-one claim, but the Court will dismiss the rest of I.B.I.D.'s claims. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

July 22, 2022