**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| I.B.I.D. ASSOCIATES LIMITED PARTNERSHIP d/b/a I.B.I.D. ASSOCIATES, L.P., : | Case No. 2:22-cv-00954-JDW |
| *Plaintiff*, : | |
| v. : | |
| THE CITY OF PHILADELPHIA, : | |
| *Defendant*. : | |

## <u>CONSENT ORDER</u>

Upon this Court's review and approval of the parties' Settlement Agreement and the parties' consent, this Court hereby:

Incorporates the parties' annexed Settlement Agreement herein;

Retains jurisdiction over this matter to enforce the terms of the parties' Settlement Agreement in the event any party breaches any provision thereof; and

Dismisses this action with prejudice with each party to bear its own costs and fees, including attorneys' fees.

*/s/ Joshua D. Wolson*
Joshua D. Wolson, J.

Dated: <u>July 31, 2023</u>

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT dated March 17, 2023, is by and between I.B.I.D. Associates Limited Partnership d/b/a I.B.I.D. Associates, L.P., on the one hand, and the City of Philadelphia and Councilmember Jamie Gauthier, on the other hand (the "Agreement").

## BACKGROUND

WHEREAS, IBID owns a square block 2.67 acre parcel of land at 3900 Market Street, Philadelphia, PA (the "Property");

WHEREAS, IBID had provided HUD-supported affordable housing known as the UCTH at its Property;

WHEREAS, IBID's contractual relationship with HUD was scheduled to expire on July 8, 2022;

WHEREAS, IBID planned to sell its Property for commercial development upon the expiration of its HUD contract;

WHEREAS, the Philadelphia City Council enacted an Ordinance entitled the AHP Affordable Housing Preservation Overlay District on March 10, 2022, which, *inter alia*, applied to IBID's Property, limited uses other than residential uses to the ground floor of a building on the Property and prevented the demolition of the Property;

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

WHEREAS, on March 14, 2022, IBID filed a Complaint in the United States District Court for the Eastern District of Pennsylvania against the City of Philadelphia and Councilmember Jamie Gauthier (Case No. 2:22-cv-00954-JDW) alleging that the Ordinance constituted a Taking in violation of the Fifth Amendment, violated the Equal Protection Clause in the Fourteenth Amendment, violated the Due Process Clause in the Fourteenth Amendment, violated the Contracts Clause in the United States Constitution and constituted a Bill of Attainder in violation of the United States Constitution;

WHEREAS, IBID also filed a Motion for a Temporary Restraining Order and Preliminary Injunction on March 14, 2022;

WHEREAS, on March 30, 2022, the Court denied IBID's Motion for a Temporary Restraining Order;

WHEREAS, on April 6, 2022, the City and Councilmember Gauthier filed a Motion to Dismiss IBID's Complaint;

WHEREAS, on May 27, 2022, the Court denied IBID's Motion for a Preliminary Injunction concerning the Takings claim in its Complaint;

WHEREAS, IBID appealed the denial of its Motion for a Preliminary Injunction to the United States Court of Appeals for the Third Circuit on May 31, 2022 (Case No. 22-2033) and IBID's appeal remains pending in the Third Circuit;

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

WHEREAS, on July 22, 2022, the Court granted the Motion to Dismiss with respect to IBID's Takings, Due Process, Contracts Clause and Bill of Attainder claims, but denied the Motion to Dismiss with respect to IBID's Equal Protection Clause claim which remains pending in the District Court;

WHEREAS, the Court appointed Magistrate Judge Scott W. Reid to assist the parties in seeking to reach a settlement agreement resolving all of IBID's claims;

WHEREAS, the parties have met and conferred with Judge Reid several times and, with his effective assistance, have now concluded this settlement agreement resolving all of IBID's claims; and

WHEREAS, this settlement agreement does not constitute an admission of liability or wrongdoing by any of the parties.

NOW, THEREFORE, intending to be legally bound hereby, the parties hereby agree as follows:

1.  **Definitions**.  As used herein, the following terms shall have the following meanings:

(a)  "AHP Overlay Ordinance" shall mean the ordinance establishing the AHP Affordable Housing Preservation Overlay District introduced on September 30, 2021 by Councilmember Jamie Gauthier, Bill No. 210778-AA (became law March 24, 2022), and the amendments to that Overlay District set forth

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

in Bill Nos. 220007 (became law October 6, 2022) and Bill No. 220921 (approved January 10, 2023);

(b)     "City" shall mean the City of Philadelphia;

(c)     "Council" shall mean the Philadelphia City Council;

(d)     "Councilmember" shall mean Councilmember Jamie Gauthier;

(e)     "Effective Date" is defined in paragraph 12 hereof;

(f)     "IBID" shall mean I.B.I.D. Associates Limited Partnership d/b/a I.B.I.D. Associates, L.P.;

(g)     "IBID's Property" or the "Property" means the 2.67 acre property at 3900-3960 Market Street, Philadelphia, PA 19104;

(h)     "MIN Overlay Ordinance" means the Ordinance establishing the MIH, Mixed Income Neighborhoods Overlay District, Bill No. 210633-A (approved January 18, 2022), effective July 18, 2022.

(i)     "National" means National Real Estate Advisors, LLC;

(j)     "Parcel A" means the parcel designated as such on Exhibit A annexed hereto;

(k)     "Settlement Payment" means IBID's transfer of $3.5 million to the City for affordable housing purposes pursuant to paragraph 6;

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

(l)   "Tenant Fund" means a fund of $3.5 million for Households of UCTH as of July 8, 2021 that, subject to the other provisions of this Agreement, will be disbursed pursuant to paragraph 6 hereof; and

(m)   "UCTH" means University City Townhomes.

2.   **AHP Overlay Ordinance Rescission**.   The Councilmember shall introduce and use best efforts to get passed and adopted into law a new Ordinance providing that IBID's Property is removed from the AHP Overlay Ordinance effective immediately upon becoming law.  At least 10 days prior to the introduction of the new Ordinance, the City shall provide IBID's counsel with a copy of the new Ordinance proposed to be introduced to comply with this paragraph 2 in order to accord IBID's counsel with the opportunity to ascertain if it does, in fact, comply with this paragraph 2.  In the event IBID believes that the new Ordinance does not comply with this paragraph 2, the City and IBID shall meet and confer before the new Ordinance is introduced in a good faith effort to modify the new Ordinance to resolve IBID's concerns.  The Councilmember and the City will use their best efforts to have the new Ordinance introduced by April 7, 2023. The ordinance adopted pursuant to this paragraph 2 hereof shall only address this paragraph 2 and not make any other changes to the AHP Overlay Ordinance or the Philadelphia Zoning Code generally beyond, in addition to, or contrary to the terms of this Agreement. If the Ordinance in this paragraph 2 does not become law by July

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

1, 2023: (a) IBID shall have the right to rescind this Agreement and demand that the City repay to IBID the $3.5 million Settlement Payment, whether or not such Settlement Payment has been distributed in whole or in part from the Tenant Fund to the UCTH Households; (b) in the event of such a demand, the City shall pay $3.5 million to IBID in immediately available funds no later than 30 days from such demand; and (c) IBID shall be entitled to resume and continue its lawsuit in No. 2:22-cv-00954-JDW and its appeal in No. 22-2033.

3.     **MIN Overlay Ordinance Amendment**. The Councilmember shall introduce and use best efforts to get passed and adopted into law a new Ordinance for the purpose of amending the MIN Overlay Ordinance as it applies in the Third Councilmanic District, such that IBID's Property shall be considered and treated for purposes of the MIN Overlay Ordinance to have 70 MIN compliant affordable dwelling units and be subject to the MIN Overlay Ordinance's lower 15% affordable dwelling unit requirement, and such that IBID may build up to 396 market rate dwelling units on its Property without any additional affordable dwelling units required under the MIN Overlay Ordinance. Any additional residential dwelling units over 396 would require the construction of additional affordable dwelling units pursuant to the MIN Overlay Ordinance, as modified by this paragraph 3. By way of example, if 496 residential dwelling units are developed on IBID's Property, the last 100 of the units would require the construction of 15 affordable dwelling units

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

pursuant to the MIN Overlay Ordinance, as modified by this paragraph 3. The crediting of IBID's property with the construction of 70 MIN compliant affordable dwelling units shall not be contingent on whether or when the City actually constructs the new affordable dwelling development on Parcel A after it is conveyed by IBID to the City. At least 10 days prior to the introduction of the new Ordinance, the City shall provide IBID's counsel with a copy of the new Ordinance proposed to be introduced to comply with this paragraph 3 in order to accord IBID's counsel with the opportunity to ascertain if it does, in fact, comply with this paragraph 3. In the event IBID believes that the new Ordinance does not comply with this paragraph 3, the City and IBID shall meet and confer before the new Ordinance is introduced in a good faith effort to modify the new Ordinance to resolve IBID's concerns. The Councilmember and the City shall use their best efforts to have the new Ordinance introduced by April 7, 2023. Neither the Ordinance adopted pursuant to this paragraph 3 nor any future Ordinance, including but not limited to any future MIN Ordinance, shall make any changes to the Philadelphia Zoning Code contrary to the terms of this Agreement. If the Ordinance in this paragraph 3 does not become law by July 1, 2023: (a) IBID shall have the right to rescind this Agreement and demand that the City repay to IBID the $3.5 million Settlement Payment, whether or not such Settlement Payment has been distributed in whole or in part from the Tenant Fund to the UCTH Households; (b) in the event of such a demand, the City shall pay $3.5

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

million to IBID in immediately available funds no later than 30 days from such demand; and (c) IBID shall be entitled to resume and continue its lawsuit in No. 2:22-cv-00954-JDW and its appeal in No. 22-2033.

4.    **IBID's Right To CMX-4 Zoning.**  As provided in paragraphs 2 and 3 hereof, it is the intent of this Agreement to restore IBID and its Property to the CMX-4 zoning district and applicable zoning overlays they occupied prior to the introduction of the AHP Overlay Ordinance on September 30, 2021, subject to the proposed amended version of the MIN Overlay Ordinance as described in paragraph 3 hereof.  Accordingly, the City agrees that IBID (and its successors-in-title) shall have the right to develop, lease, or sell its Property in accordance with its CMX-4 zoning as it exists as of the date of this Agreement, subject only to the MIN Overlay Ordinance as modified pursuant to paragraph 3 hereof and without the applicability of the AHP Overlay Ordinance.  To the extent that the Ordinance proposed to be introduced and adopted pursuant to paragraph 3 hereof imposes additional restrictions or limitations on the use or development of properties within the MIN Overlay District or otherwise, those additional restrictions or limitations shall not be applicable to IBID's Property.  The City agrees that IBID's right to develop, lease, or sell its Property as described in this paragraph 4 shall be vested upon the Effective Date and will remain in place until (a) the Property has secured full, final and unappealable City and State zoning and development entitlements (*i.e.,* all

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

regulatory prerequisites to building permit(s) therefor) for all contemplated development phases, or (b) 7 years, whichever is less, from and after the Effective Date.

     5.    **The Transfer Of Property From IBID To The City**.  Within 15 days of the Effective Date and IBID having demolished (at IBID's expense) the UCTH structures currently on IBID's Property in accordance with paragraph 10 hereof, IBID shall transfer Parcel A to the City in order to permit the City to build a new affordable housing development on Parcel A. The City agrees that IBID shall not be responsible for any hard and soft costs incurred in the development and construction of the new affordable housing development, including but not limited to the financing of the design and construction and the provision of federal, state and local resources for its development and construction.  The City shall ensure that the property will meet all legal design requirements, such as the Art Commission or Civic Design review where applicable, and, consistent with such requirements, the City will make best efforts to ensure that the front and back facades are similar in terms of the quality, type and proportions of materials and finishes.  The new project shall have no more than 75 units comprising a mix of approximately 40% one, 40% two and 20% three bedroom units. One hundred percent (100%) of the units in the new project must be affordable to persons at or below eighty percent (80%) of the area median income as long as the average development income and rent limit does

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

not exceed 60% AMI, while pursuing operating subsidies to achieve deeper affordability in accordance with HUD requirements. Further, tenants shall pay no more than 30% of their income in housing expenses (rent and utilities).

6. **The Tenant Fund**. On May 1, 2023, IBID will make the $3.5 million Settlement Payment to the City for affordable housing related purposes and the City intends to use an equivalent amount of money for a Tenant Fund subject to the City Charter mandated appropriations and spending processes and the following agreements:

(a) IBID's Settlement Payment and land donation shall satisfy in full any monetary obligation imposed on it pursuant to the MIN Overlay Ordinance, as modified pursuant to paragraph 3 hereof, and the City acknowledges that IBID need not make any other payment required by the Philadelphia Zoning Code to develop its Property pursuant to its CMX-4 zoning and the MIN Overlay Ordinance, as modified pursuant to paragraph 3 hereof. The Settlement Payment, however, does not satisfy any other payment required to obtain permits or additional optional density bonuses IBID may seek for future development or other required fees not discussed above;

(b) The City will provide a copy of the City's Agreement with United Way to IBID's counsel for attorneys'-eyes'-only review at least 10 days prior to the conveyance or transfer of the Tenant Fund funds to United Way in order for

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

IBID's counsel to assure themselves that there are no potential statutory or other violations involved in such conveyance or transfer;

     (c)     Contemporaneous with IBID's Settlement Payment to the City, IBID and the City shall enter into an indemnification agreement in the form of Exhibit C annexed hereto, and an individual resident of UCTH (defined as a recipient in the United Way Agreement) shall provide a release in the form of Exhibit D annexed hereto to IBID before that resident receives any distribution from the Tenant Fund;

     (d)     Neither the City nor United Way shall make any payment from the Tenant Fund to any UCTH resident without first receiving from such resident the executed release referenced in subparagraph (c) of this paragraph 6 and the City will promptly send such executed releases to IBID;

     (e)     No money shall be paid from the Tenant Fund to any current UCTH resident who has not completed financial counseling session(s) with United Way;

     (f)     The City agrees that: (i) its intent is to provide the Household of each UCTH unit as of July 8, 2021 with $50,000 from the Tenant Fund to be evenly distributed amongst the unit's named tenants as of July 8, 2021; (ii) if such payment is made, it is the City's sole responsibility to ensure that the payments are legally and properly used and accounted for by the residents; and (iii) no such

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

funds shall be paid to any current resident until and unless such resident has vacated their UCTH unit, except as provided in subparagraphs (g) and (i) hereof;

(g)     The City shall be entitled to agree that United Way shall have the discretion to pay up to $20,000 to any current resident of the UCTH once such resident has completed financial counseling session(s) with United Way and has executed the release referenced in subparagraph (c) of this paragraph 6;

(h)     The City shall be entitled to agree that United Way may make a payment, as it determines, from the Tenant Fund to any resident who has provided the executed release referenced in subparagraph (c) of this paragraph 6 and has vacated the UCTH premises; and

(i)     IBID does not object to the City or United Way paying any current UCTH resident up to the full $50,000 payment for use as a down payment for the purchase of a home as required by an agreement of sale, subject to the City's or United Way's responsibility for the use of such payment.

7.     **Eviction Proceedings**.  Nothing in this Agreement shall restrict IBID's ability to commence: (a) diversion proceedings against any UCTH resident who has not relocated at any time after the execution of this Agreement; and (b) eviction proceedings against any UCTH resident who has not relocated commencing on August 15, 2023.

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

8.    **UCTH Resident Contact Information**.  Within 15 days of the date of this Agreement, IBID or its designee shall provide to the City all of the contact information for the UCTH residents, as listed on unit leases and, to the extent in their possession, preferred language, forwarding addresses, phone numbers, email addresses and any other contact information IBID and IBID or its designee possess for residents who have already relocated.

9.    **Opportunity Plan**.  IBID agrees that in any agreement of sale it enters into for all or part of IBID's Property, it will require the developer of IBID's Property to establish an Economic Opportunity Plan that identifies threshold goals for minority professional services, construction management and subcontracting partner opportunities and local workforce hiring for construction activities, provided, however, that the City agrees that: (i) any such Economic Opportunity Plan shall be on such form with such standard provisions and goals that are generally required by the City's Office of Economic Opportunity; and (ii) with respect to minority equity ownership and on-site post-construction permanent jobs, IBID will only strongly encourage that its future purchasers incorporate such commitments in any resulting real estate developments.

10.    **Demolition**.  Nothing in this Agreement shall restrict IBID's ability to demolish any vacant UCTH building.  The City recognizes that, until IBID demolishes the UCTH, along with both new Ordinances becoming law pursuant to

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

paragraphs 2 and 3 hereof, IBID will have no obligation to transfer Parcel A to the City pursuant to paragraph 5 hereof.

11. **Assignment**. IBID shall have the right to assign any or all of the provisions in this Agreement to any purchasers, lessees or developers of all or part of its Property without the City's consent.

12. **Effective Date And Consent Order**. The Effective Date of this Agreement shall be the date when both new Ordinances have become law pursuant to paragraphs 2 and 3 hereof and 30 days have elapsed without any appeal or challenge in court being filed to nullify or vacate them.   Within 15 days of the Effective Date, the parties shall have the right to submit the consent order in the form of Exhibit E annexed hereto to Judge Wolson for Judge Wolson to enter the consent order.  In the event any appeal or court challenge is filed with respect to either the new Ordinance adopted pursuant to paragraph 2 hereof or the new Ordinance adopted pursuant to paragraph 3 hereof within 30 days of their becoming law: (a) IBID shall have the right to rescind this Agreement and demand that the City repay to IBID the $3.5 million Settlement Payment, whether or not such Settlement Payment has been distributed in whole or in part from the Tenant Fund to the UCTH Households; (b) in the event of such a demand, the City shall pay $3.5 million to IBID in immediately available funds no later than 30 days from such demand; and

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

(c) IBID shall be entitled to resume and continue its lawsuit in No. 2:22-cv-00954-JDW and its appeal in No. 22-2033.

13. **Preliminary Approval By The District Court**. Notwithstanding paragraph 12 hereof, upon the execution of this Agreement by the parties, this Agreement shall be submitted to Judge Wolson for his preliminary approval of the settlement memorialized in this Agreement. This agreement shall only be binding upon the parties if Judge Wolson preliminarily approves this Agreement.

14. **Third Circuit**. In the event Judge Wolson approves this Agreement pursuant to paragraph 13 hereof, IBID and the City will send a letter to the Third Circuit in the form of Exhibit F annexed hereto requesting the Third Circuit to continue to hold IBID's appeal C.A.V.

15. **Mutual General Releases**. Within 15 days of the Effective Date, the City and the Councilmember, on the one hand, and IBID, on the other hand, shall generally release each other with the sole exception being the parties' obligations and rights under and pursuant to this Agreement. The releases shall be in the form of Exhibit G annexed hereto.

16. **No Admission**. This Agreement shall not constitute an admission of liability or wrongdoing under any law or common law by any of the Parties hereto or their respective officers, directors, partners, members, employees,

DocuSign Envelope ID: 530943BD-8D72-4321-8027-62A03BCD3E05

sureties, insurers, architects, engineers, consultants, construction managers, independent contractors, agents, representatives, and assigns.

17. **<u>Entire Agreement</u>**.   This Agreement constitutes the entire agreement of the Parties with respect to the settlement memorialized herein.  This Agreement supersedes all prior agreements, negotiations, discussions and understandings not expressly memorialized herein.

18. **<u>Recitals and Headings</u>**.  The recitals in the above Background section are incorporated herein solely for reference purposes.   The captions preceding the text of this Agreement are for convenience of reference only and shall not constitute a part of this Agreement or in any way affect its meaning, construction or effect.

19. **<u>Governing Law</u>**.  This Agreement shall be governed, interpreted and construed in accordance with the laws of the Commonwealth of Pennsylvania without reference to choice of law provisions.

IN WITNESS WHEREOF, the Parties, intending to be legally bound hereby, have executed this Agreement as of the dates shown.

I.B.I.D. ASSOCIATES LIMITED PARTNERSHIP

Dated:  March 17, 2023

Brett Altman

THE CITY OF PHILADELPHIA

Dated:  March 17, 2023

_____
Tumar Alexander
Managing Director

COUNCILMEMBER JAMIE GAUTHIER

Dated:  March 17, 2023

_____
Jamie Gauthier

THE CITY OF PHILADELPHIA

Dated: March 17, 2023

Tumar Alexander
Managing Director


COUNCILMEMBER JAMIE GAUTHIER


Dated: March 17, 2023

Jamie Gauthier

# EXHIBIT A



SCHEME 7 Split PARCEL

MARKET STREET - 100'-0" WIDE

S. 39TH STREET - 60'-0" WIDE

S. 40TH STREET - 60'-0" WIDE

LUDLOW ST - 40'-0" WIDE

PARCEL A - 23,595 SF

PARCEL B - 98,045 SF

110' - 0"

199' - 6"

490' - 4"

214' - 6"

3900 MARKET STREET SPLIT PARCEL STUDY

January 10, 2023

28

CONFIDENTIAL DRAFT MATERIAL FOR DISCUSSION PURPOSES ONLY
"DRAWINGS" ARE AS AND CALCULATIONS ARE PRELIMINARY IN NATURE AND SUBJECT TO CHANGE
DRAWINGS DIAGRAMS ARE NOT TO SCALE

# EXHIBIT B

# Intentionally Omitted

# EXHIBIT C

DocuSign Envelope ID: F42C9228-FCAB-4F56-8400-6D0BE91122A4

## INDEMNIFICATION AGREEMENT

**THIS INDEMNIFICATION AGREEMENT** (this "**Agreement**") is made and effective as of March 17, 2023 between the City of Philadelphia (the "**City**"), a city of the first class and home-rule city of the Commonwealth of Pennsylvania, and I.B.I.D. Associates Limited Partnership, a Pennsylvania limited partnership ("**IBID**"). The City and IBID are sometimes hereinafter referred to together as the "**Parties**" and each separately as a "**Party**."

### Background

A.     IBID and the City have entered into a settlement agreement dated as of the date hereof pursuant to which they resolved all issues arising out of the Parties' disputes (the "**Settlement Agreement**"). Pursuant to the Settlement Agreement, IBID shall, on or before May 1, 2023, deposit $3,500,000 (the "**Funds**") with the City. As more fully set forth in the Settlement Agreement, it is the intent of the City to transfer an amount equivalent to the Funds to United Way, to then disburse said funds to tenants and certain former tenants (collectively, "**Eligible Tenants**") of the housing development located at 3900 Market Street, Philadelphia, Pennsylvania (the "**Property**").

B.     The Parties intend that once IBID has deposited the Funds with the City, IBID shall have no further liabilities or obligations regarding the Funds, and that the City will indemnify, defend and hold IBID and its affiliates, including but not limited to Altman Management Company II, Inc., and their respective officers, directors, shareholders, partners, managers, members, agents and employees (IBID and such other individuals and entities being hereinafter referred to each, individually, as an "**Indemnified Party**" and collectively as the "**Indemnitees**") harmless from and against all liabilities arising out of the Funds, as more fully set forth below.

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

1.     _Incorporation_. The above Background Section is hereby incorporated into the body of this Agreement by reference.

2.     _Indemnification and Other Obligations_. The City hereby agrees, upon IBID's deposit of the Funds with the City, to indemnify the Indemnitees, defend with counsel reasonably acceptable to the Indemnitees, and hold harmless the Indemnitees from and against all losses,

DocuSign Envelope ID: F42C9228-FCAB-4F56-8400-6D0BE91122A4

judgments, damages, liabilities, costs and expenses (including but not limited to court costs and reasonable legal fees) incurred by any of the Indemnitees in connection with any claim, demand, suit or other legal action brought by any third party, including but not limited to any current or prior tenant of the Property, with respect to the distribution of funds to any such third party (each, a "**Claim**" and collectively, the "**Claims**"). Without limiting the generality and applicability of the preceding sentence, the City's obligations under this Section 2 shall apply to any legal action brought by an Eligible Tenant or any third party claiming to be an Eligible Tenant regarding the City's distribution of funds, the sufficiency of the amount of funds, the timing or manner of the distribution of funds to any third party, or the identity of the recipients of funds (except insofar as a third party claiming to be an Eligible Tenant was in fact an Eligible Tenant but was not identified as such by IBID). The indemnification and other obligations under this Section 2 shall apply only to the extent that such Claims are not caused by the negligent act, negligent omission or willful misconduct of the Indemnitees.

3.  <u>Claims Procedures</u>.

    a.  If any written Claim is received by IBID, it will promptly inform the City in writing of such Claim; provided, that any failure by IBID to so inform the City will not constitute a waiver of any rights of IBID under Section 2, above, except to the extent the rights of the City are actually prejudiced by such failure.  If any Claim is asserted in writing against an Indemnitee other than IBID, a failure by such Indemnitee to give the City prompt written notice in writing of such Claim will not constitute a waiver of any rights of such Indemnitee under Section 2, above, except to the extent that the rights of the City are actually prejudiced by such failure.

    b.  The City will be entitled and obligated to appoint counsel of its choice at the expense of the City to represent an Indemnitee in each legal action in which a Claim is asserted (in which case the City will not be responsible for the fees and expenses of any separate counsel retained by that Indemnitee, except as set forth below).  Notwithstanding the City's appointment of counsel to represent an Indemnitee in any such action, such Indemnitee will have the right to employ separate counsel, and the City will bear the reasonable fees, costs and expenses of such separate counsel, if:

        (i)  the use of counsel chosen by the City to represent the Indemnitee would present such counsel with a conflict of interest;

DocuSign Envelope ID: F42C9228-FCAB-4F56-8400-6D0BE91122A4

(ii)    the City will not have employed counsel to represent the applicable Indemnitee within a reasonable time after notice of the institution of such action; or

(iii)    the City authorizes the Indemnitee in writing to employ separate counsel at the City's expense.

c.    The City will not be liable for any settlement or compromise by an Indemnitee of a Claim as long as the City complies with its obligations under this Agreement in all material respects.

4.    <u>Third Party Beneficiaries</u>.  The Indemnitees other than IBID are third party beneficiaries of this Agreement.

5.    <u>Representation and Warranty</u>.  The Parties each represent and warrant that, as of the date of the full execution of this Agreement, they have the right and authority to execute this Agreement and that this Agreement is a legal, valid and binding obligation of such Party, enforceable in accordance with its terms, except to the extent enforceability is limited by bankruptcy or other laws relating to creditors' rights. Nothing herein shall be construed as a waiver of those defenses, immunities, and limitations on damages available to the City pursuant to the Pennsylvania Political Subdivision Tort Claims Act, Act of October 5, 1980, P.L. 693, No. 142 (42 Pa. C.S.A. § 8541 et. seq.) and the indemnification provided hereunder shall be limited to $500,000 per occurrence.

6.    <u>Notices.</u>  All notices and other communications given pursuant to this Agreement shall be sent to each of the Parties by either certified mail, return receipt requested and postage prepaid, or by reputable overnight delivery service with tracking capabilities, or by email, if such email is followed by and received within one (1) day thereafter by either of the first two methods of delivery, and addressed:

If to IBID:

Brett Altman
240 New York Drive, Suite 1
Fort Washington, PA  19034
Attention:  Brett Altman
Email:  Brett@altmanco.com

DocuSign Envelope ID: F42C9228-FCAB-4F56-8400-6D0BE91122A4

with a copy to:

> Alan S. Ritterband
>
> 1735 Market Street, 51st Floor
>
> Philadelphia, PA  19103
>
> Attention:  Alan S. Ritterband
>
> Email:  Ritterband@ballardspahr.com

If to the City:

> City of Philadelphia Law Department
>
> 1515 Arch St., 14th Floor,
>
> Philadelphia, PA 19102
>
> Attention: Litigation Chair
>
> Email: City_Closure_Complaints@phila.gov

with a copy to:

> City of Philadelphia Law Department
>
> 1515 Arch St., 15th Floor,
>
> Philadelphia, PA 19102
>
> Attention: Michael Pfautz
>
> Email: michael.pfautz@phila.gov

and:

> City of Philadelphia Law Department
>
> 1515 Arch St. , 17th Floor,
>
> Philadelphia, PA 19102
>
> Attention: Renee Garcia
>
> Email: renee.garcia@phila.gov

A Party may change its address for notices and other communications by providing a notice thereof to the other Party as provided above.

7.      Headings. The captions preceding the text of the articles, sections and paragraphs of this Agreement are for convenience of reference only and shall not constitute a part of this Agreement or in any way affect its meaning, construction or effect.

8.      Entire Agreement. This Agreement and the Settlement Agreement represent the entire agreement between IBID and the City with respect to the subject matter thereof and supersede all prior negotiations, either written or oral, with respect to the subject matter thereof.

9.      Amendment. This Agreement may be amended only by a written instrument signed by both Parties.

10.     Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns; provided, however, that the City may not assign its obligations under this Agreement.

11.     Severability.  If any provision of this Agreement shall be held or deemed to be, or shall in fact be, invalid, inoperative or unenforceable, because of the conflict of any provision with any statute or for any other reason, such circumstance shall not have the effect of rendering any other provision in this Agreement invalid, inoperative or unenforceable, but this Agreement shall be reformed and construed as if such invalid, inoperative or unenforceable provision had never been contained herein and such provision shall be reformed so that it would be valid, operative and enforceable to the maximum extent permitted by law.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the day and year first written above.

**CITY OF PHILADELPHIA**

Name: _Tumar Alexander_

Title: _Managing Director_

DocuSign Envelope ID: F42C9228-FCAB-4F56-8400-6D0BE91122A4

**I.B.I.D. ASSOCIATES LIMITED PARTNERSHIP**

*Brett Altman*
000BE1448C37459

Name: Brett Altman

# EXHIBIT D

## RELEASE

This Release is made and effective as of _____, 2023 by _____, an individual with an address at _____ in favor of I.B.I.D. Associates Limited Partnership, a Pennsylvania limited partnership ("**IBID**"), and certain entities related to IBID, as provided below. The Undersigned Individual and IBID are sometimes hereinafter referred to together as the "**Parties**" and each separately as a "**Party**."

### Background

IBID and the City of Philadelphia (the "**City**") have entered into a settlement agreement dated March 17, 2023, pursuant to which they resolved all issues arising out of their disputes (the "**Settlement Agreement**"). Pursuant to the Settlement Agreement, IBID shall, on or before May 1, 2023, deposit $3,500,000 (the "**Payment**") with the City. As more fully set forth in the Settlement Agreement, it is the intent of the City to transfer an amount equivalent to the Payment to United Way (the "**Funds**"), to then disburse said Funds to current tenants and certain former tenants (collectively, "**Eligible Tenants**") of the housing development located at 3900 Market Street, Philadelphia, Pennsylvania (the "**Property**").

In consideration of the Undersigned Individual's receipt of a distribution from the Funds, the Undersigned Individual (as hereinafter defined) has agreed to release the Released Parties (as hereinafter defined) from certain liabilities, as provided below.

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, do hereby agree as follows:

1.    _Incorporation_. The above Background section is hereby incorporated into the body of this Agreement by reference.

2.    _Definition_.  As used herein, the term "Undersigned Individual" means the person signing this Release, all persons residing in the University City Townhomes unit with the person signing this Release, and all of their heirs, executors, administrators and assigns and any other persons or entities which might claim by, through or under any of them.

3.    _Scope of Release_.  This Release only covers claims relating to the University City Townhomes, the units therein and the residency of the Undersigned Individual therein.

4.    _Release._ Upon IBID's deposit of the $3,500,000 Payment with the City and the Undersigned Individual's receipt of a portion of said Payment from the City or the United Way, the Undersigned Individual hereby releases, remises, acquits, and forever discharges IBID and all of IBID's past and present affiliates (including but not limited to Altman Management Company II, Inc.) and partners, and all of their respective officers, directors, shareholders, partners, managers, members, agents and employees (IBID and such other individuals and entities being hereinafter referred to as the "**Releasees**") from and against any and all actions and causes of action, damages, suits, debts, dues, accounts, bonds, agreements, contracts, covenants, fiduciary obligations, promises, judgments, costs, attorneys' fees, expenses, compensation, claims, and demands, of every kind and character, whether asserted or unasserted, whether known or unknown,

suspected or unsuspected, in law or in equity, from the beginning of time, which arise out of or relate in any way to any claim: (a) that the amount of Funds distributed to the Undersigned Individual is insufficient or that receipt of the Funds distributed caused the Undersigned Individual to lose or fail to qualify for any governmental benefits or suffer any other damages related thereto; and/or (b) related to termination of the HUD contract, termination of their tenancy or the Settlement Agreement dated March 17, 2023 between and among the City of Philadelphia, Councilmember Jamie Gauthier and IBID or any damages related thereto.

5. <u>Release Exclusion</u>. This Release does not cover or include any other actions and causes of action, damages, suits, debts, dues, accounts, bonds, agreements, contracts, covenants, fiduciary obligations, promises, judgments, costs, attorneys' fees, expenses, compensation, claims, and demands, of every kind and character, whether asserted or unasserted, whether known or unknown, suspected or unsuspected, in law or in equity, from the beginning of time, which arise out of or relate to the Undersigned Individual's tenancy at the University City Townhomes relating to security deposits, rental payments, personal injury on the premises and security of personal property.

6. <u>Further Tenant Rights.</u> Nothing contained in this Release is intended to affect or curtail any rights the Undersigned Individual may have after Parcel A has been transferred by IBID to the City pursuant to the Settlement Agreement with respect to becoming a tenant in the new affordable housing to be constructed on Parcel A.

7. <u>Third Party Beneficiaries.</u> The Releasees, other than IBID, are third party beneficiaries of this Agreement.

8. <u>Representation and Warranty.</u> The Parties each represent and warrant that, as of the date of the full execution of this Agreement, they have the right and authority to execute this Agreement and that this Agreement is a legal, valid and binding obligation of such Party, enforceable in accordance with its terms, except to the extent enforceability is limited by bankruptcy or other laws relating to creditors' rights.

9. <u>Headings.</u> The captions preceding the text of the sections and paragraphs of this Agreement are for convenience of reference only and shall not constitute a part of this Agreement or in any way affect its meaning, construction or effect.

10. <u>Entire Agreement.</u> This Agreement represents the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior negotiations, either written or oral, with respect to the subject matter hereof.

11. <u>Amendment.</u> This Agreement may be amended only by a written instrument signed by all Parties.

12. <u>Successors and Assigns.</u> This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, successors and assigns.

13. <u>Severability.</u> If any provision of this Agreement shall be held or deemed to be, or shall in fact be, invalid, inoperative or unenforceable, because of the conflict of any provision with

any statute or for any other reason, such circumstance shall not have the effect of rendering any other provision in this Agreement invalid, inoperative or unenforceable, but this Agreement shall be reformed and construed as if such invalid, inoperative or unenforceable provision had never been contained herein and such provision shall be reformed so that it would be valid, operative and enforceable to the maximum extent permitted by law.

14.      Governing Law. This Agreement shall be governed, interpreted, and construed in accordance with the laws of the Commonwealth of Pennsylvania without reference to choice of law provisions.

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the date shown.

_____          _____
Date                                                              Tenant

# EXHIBIT E
# Intentionally Omitted

# EXHIBIT F

# Ballard Spahr
### LLP

--------------------

1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
TEL 215.665.8500
FAX 215.864.8999
www.ballardspahr.com

David H. Pittinsky
Tel: 215.864.8117
Fax: 215.864.8999
pittinsky@ballardspahr.com

March __, 2023

*By Electronic Filing*

Patricia Dodszuweit
Clerk of Court
United States Court of Appeals Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

> Re:   IBID Associates Limited Partnership v. Jamie Gauthier, et al.
>        Case No. 22-2033
>        <u>District Court Case No. 2-22-cv-00954-JDW</u>

Dear Ms. Dodszuweit:

On March __, 2023, the parties to this appeal reached a settlement agreement covering, *inter alia*, this appeal. However, in order to bind the parties to the settlement, certain subsequent events must take place on or before August 1, 2023. Accordingly, the parties jointly request that the Court continue to hold the Case C.A.V. until the Court receives a future notice from the parties. If the subsequent events occur, the parties will so notify the Court and IBID will dismiss its appeal. If the subsequent events do not occur, the parties will notify the Court and request the relisting of the appeal for oral argument.

Respectfully yours,

*/s/ David H. Pittinsky*
David H. Pittinsky
Counsel for IBID

*/s/ Kelly S. Diffily*
Kelly S. Diffily
Counsel for Councilmember
Jamie Gauthier and the
City of Philadelphia,

DHP/gpa

cc:   Ashley Ritz, Calendar Clerk

DMFIRM #407044571 v1

# EXHIBIT G

DocuSign Envelope ID: C32FF60E-BDB5-49B4-9F49-50B611058436

# MUTUAL RELEASE

THIS MUTUAL RELEASE dated _____, 2023, is by and between I.B.I.D. Associates Limited Partnership d/b/a I.B.I.D. Associates, L.P. ("IBID"), on the one hand, and the City of Philadelphia and Councilmember Jamie Gauthier, on the other hand (the "Mutual Release").

## BACKGROUND

Pursuant to paragraph 15 of the Settlement Agreement entered into by the parties thereto, the parties thereto have agreed, within 15 days of the Effective Date of the Settlement Agreement, to enter into this Mutual Release.

NOW, THEREFORE, intending to be legally bound hereby, the parties hereby agree as follows:

1. **IBID Release**. Upon the occurrence of the Effective Date pursuant to paragraph 12 of the Agreement and the entry of the consent order pursuant to paragraph 12 of the Agreement, IBID, on behalf of itself and its affiliates, including but not limited to Altman Management Company II, Inc., and their respective officers, directors, shareholder, partners, managers, members, agents, employees, successors and assigns (hereinafter individually and collectively referred to as the "IBID Releasors"), hereby fully and finally release, acquit and discharge the City of Philadelphia and Councilmember Jamie Gauthier (hereinafter individually and collectively referred to as the "City Releasees") from any and all

DocuSign Envelope ID: C32FF60E-BDB5-49B4-9F49-50B611058436

claims, allegations, demands, damages, charges, complaints, actions, lawsuits, rights, liabilities, losses, injuries, obligations, disputes and causes of action of any kind, and whether known or unknown, suspected or unsuspected, asserted or unasserted, or actual or contingent, for monetary, injunctive, declaratory, or other relief, however described, that were brought, could have been brought, or could be brought now or in the future by the IBID Releasors against the City Releasees that in any way relate to or arise from any of the City Releasees' alleged actions, omissions, incidents or conduct: (a) under or in violation of the United States Constitution; (b) concerning IBID's pursuit of its rights to sell its property in accordance with its zoning; or (c) asserted or recited by IBID in its Complaint. This release covers the period of time from the beginning of time through and including the Effective Date of the Agreement. This release, however, shall not include any claims asserted by IBID to enforce the terms of the Agreement or to assert its rights under the Agreement.

2. **City and Councilmember Release**. Upon the occurrence of the Effective Date pursuant to paragraph 12 of the Agreement and the entry of the consent order pursuant to paragraph 12 of the Agreement, the City of Philadelphia and Councilmember Jamie Gauthier (hereinafter individually and collectively referred to as the "City Releasors") hereby fully and finally release, acquit and discharge IBID and its affiliates, including but not limited to Altman Management

DocuSign Envelope ID: C32FF60E-BDB5-49B4-9F49-50B611058436

Company II, Inc., and their respective officers, directors, shareholders, partners, managers, members, agents, employees, successors and assigns (hereinafter individually and collectively referred to as the "IBID Releasees") from any and all claims, allegations, demands, damages, charges, complaints, actions, lawsuits, rights, liabilities, losses, injuries, obligations, disputes and causes of action of any kind, and whether known or unknown, suspected or unsuspected, asserted or unasserted, or actual or contingent, for monetary, injunctive, declaratory, or other relief, however described, that could have been brought, or could be brought now or in the future by the City Releasors against the IBID Releasees that in any way relate to or arise from any of the IBID Releasees' alleged actions, omissions, incidents, or conduct: (a) asserted or recited by IBID in its Complaint; or (b) concerning IBID's pursuit of its rights to sell its property in accordance with its zoning. This release covers the period of time from the beginning of time through and including the Effective Date of the Agreement. This release, however, shall not include any claims asserted by the City Releasors to enforce the terms of the Agreement or to assert their rights under the Agreement.

DocuSign Envelope ID: C32FF60E-BDB5-49B4-9F49-50B611058436

IN WITNESS WHEREOF, the parties hereto, intending to be legally

bound hereby, have executed this Mutual Release as of the dates shown.

I.B.I.D. ASSOCIATES LIMITED
PARTNERSHIP

Dated: _____, 2023

_____
Brett Altman

THE CITY OF PHILADELPHIA

Dated: _____, 2023

_____
Tumar Alexander
Managing Director

COUNCILMEMBER JAMIE GAUTHIER

Dated: _____, 2023

_____
Jamie Gauthier

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have executed this Mutual Release as of the dates shown.

I.B.I.D. ASSOCIATES LIMITED
PARTNERSHIP

Dated: _____, 2023

_____
Brett Altman

THE CITY OF PHILADELPHIA

Dated: March 22, 2023

_____
Tumar Alexander
Managing Director

COUNCILMEMBER JAMIE GAUTHIER

Dated: March 2023

_____
Jamie Gauthier

DMFIRM #407077942 v3                                    4